HENRY MUELLER, Appellant, v. STATE AUTOMOBILE INSURANCE ASSOCIATION, Appellee.

No. 43728.

JUNE 15, 1937.

Bell & Level and M. R. Tan Creti, for appellant.

Floyd E. Page, for appellee.

HAMILTON, J.—While the truck owned by appellee's insured was temporarily stopped on the highway without lights or flares of any kind, the appellant's truck driver, while operating his heavily loaded truck upon the same highway, approached said parked truck from the rear at a speed of from 20 to 25 miles per hour, in a fog which cut down visibility to 35 feet, and while so proceeding, met an approaching vehicle, did the usual and proper thing, switched on his dim lights, and when he stepped on the switch to again put on the regular lights they did not come on, and he was left in complete darkness at a point 50 feet from the stalled truck, which had not been observed, and which, because of the limited visibility, was not discernible at the fifty-foot point where his lights failed to come on. Appellant's truck was equipped with an emergency spotlight not connected with the regular lights, which he might have turned on. Appellant's truck—so the driver testified—at the speed he was going, could probably have been stopped within a distance of 25 feet, had the brakes been immediately applied. Instead of immediately applying the brakes and immediately turning on the spotlight, he first attempted to restore his lights by manipulating the switch back and forth a "couple of times" without avail. He then turned on the spotlight which revealed to him for the first time the stalled truck only ten or fifteen feet ahead of him. The pavement was slippery. He "eased" on his brakes, pulled to the left, but was too close to avoid a collision. The front of appellant's truck ran into the left rear corner of the other truck, shoving the front part of the stalled truck to the right into the ditch, the appellant's truck coming to rest on the left side of the pavement, traveling about five feet after the impact. The question is, Was the driver of appellant's truck guilty of contributory negligence as a matter of law? The trial court was of the opinion that he was and accordingly directed a verdict for the defendant. Appellant alleged and now insists that his driver was faced with a sudden emergency not of his own making, in that his lights refused to come on, while appellee contends the emergency was of his own making, and hence will avail him nothing.

It can readily be seen that the record presents a hairsplitting situation. The difficulty is not so much in determining the law, but in applying it to the facts in the particular case. The trial court, after summing up the evidence, based his ruling

as follows: "Assuming all this testimony to be true, the court finds that when the driver's light failed him, that he had no vision whatever, and that under section 5029 of the Code it was his duty to stop his truck. It was his duty to immediately apply his brakes and proceed to make his truck come to a stop. This he failed to do when he was aware that he was without lights and had no vision. If he had done his duty and immediately applied his brakes, according to his own testimony, he should have come to a stop within from 20 to 25 feet, and if this had been done, according to the testimony of the driver of the car, this collision would not have taken place. The court therefore finds that the driver of plaintiff's truck, immediately prior to the collision of the trucks, was guilty of negligence which contributed in some way to the collision in question, and the negligence of the driver of the truck being imputable to the plaintiff, plaintiff likewise was guilty of negligence which contributed in some way to the collision in question."

Appellant in his argument calls attention to the following evidentiary matters, all of which he contends bear upon the matter of legal excuse and which presented a fact situation which should have been submitted to the jury for their determination as to whether such excuse was established:

1. Weather condition existing at the time of accident. "It was foggy from Council Bluffs to point of accident."

2. Color and condition of pavement. "It was cold and freezing a little with mist causing pavement to become wet and black." "The road was a little more slippery at the point where the road led into the field than at other places on the highway." "I didn't know there was any mud on the paving right at the spot of the accident."

3. Color of McCord's truck. "McCord's truck was kind of light grey color and blended with the color of the pavement in the dark."

4. Unanticipated failure of lights on appellant's truck. "He (driver of appellant's truck) pushed the dimmer button a couple of times, but the lights failed to come on."

5. Car approaching from opposite direction. "There was a car approaching my truck from the opposite direction about the time and place of accident." "The lights of the car coming from the opposite direction were bright but I could see against and into them."

6. The curve and grade of highway at the point where collision occurred. "McCord's truck was at a point where a gentle curve started in the road." "The point where the accident happened is slightly upgrade until you get there, then level."

Under the facts and circumstances in this case, we can eliminate from our consideration everything except the failure of the light to come on. Both appellant and the driver of his truck were quite familiar with this road between Sioux City and St. Joseph, Missouri. Appellant had been operating this truck over this route two or three times a week for several years, and the driver had been so engaged for four years, a sufficient length of time to become familiar with all the ordinary conditions that might prevail, not only in clear weather, but in foggy and rainy weather, not only when the pavement was dry, but also when it was wet and slippery. All these matters were inherent in the ordinary hazards of driving. Appellant's truck was heavily loaded. There is no claim that they suddenly drove into a foggy condition of weather. This had existed more or less from Council Bluffs to the scene of the accident, becoming worse as they proceeded northward. Likewise, the slippery condition of the roads gradually became worse. However, the failure of the light to respond when the switch was applied without question presented an emergency not of the appellant's or the truck driver's making, and therefore the issue narrows down to a consideration of what the driver did in the second or two that elapsed after the lights failed and before the time of the collision. The driver of appellant's truck could have immediately reached for his emergency spotlight switch, located on the dash to his left and applied the brakes, and had he done so, under his own testimony the accident would probably have been averted, for he states that he probably could have stopped within 20 or 25 feet, but instead of doing so, he did what the jury might have found any ordinarily prudent person might have done, first pressed down on the foot switch a time or two in an effort to get the lights to respond. Failing in this, he reached for and turned on the emergency light, and at the same time applied the brakes. No one was holding a stop watch or looking at the speedometer, but at most under the evidence as presented to us, and to the trial court, the entire time did not exceed two seconds,

and perhaps less, from the time the lights went out until the accident occurred.

■■■ In a situation like this, are we to lay down the rule that the failure on the part of the truck driver to do under any and all circumstances the thing which the evidence shows could have been done, namely, make immediate application of the brakes, or switch on the emergency light, either of which in this instance would probably have enabled the driver of appellant's truck to avoid striking the stalled truck, or, are we to lay down a rule that the driver's conduct in this emergency of sudden extinction of lights is to be measured by the ordinary careful and prudent person standard in determining whether or not he created his own emergency? Our court has spoken quite emphatically and rightly so in reference to this matter of driving blindly, as a few quotations from our decisions will indicate:

"At no time should an automobile be operated upon the public highways when the driver cannot see ahead for a distance which will enable him to bring his car to a stop without injuring anyone. The automobile driver should not 'take a chance' or 'trust to luck'. Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569, supra. While taking a chance, or trusting to luck, he may injure or kill a human being or destroy the property of another. To avoid such catastrophe, the legislature required that the operator drive his automobile at such a speed as to enable him to stop it 'within the assured clear distance ahead', and thereby avoid injury or death to human beings and the destruction of property. Consequently, it is evident that the words 'within the assured clear distance ahead', as used in the statute, signify that the operator of the automobile, when driving at night as well as in the day, shall at all times be able to stop his car within the distance that discernible objects may be seen ahead of it." Lindquist v. Thierman, 216 Iowa 170, at page 177, 248 N. W. 504, 507, 87 A. L. R. 893.

■■ "It is the well-settled rule in this state that, where the view of the driver of an automobile is obstructed by smoke, fog, or other conditions of the weather, so that his visibility is entirely gone, he must stop until his vision has cleared, and the failure so to do is negligence. Hart v. Stence, 219 Iowa 55, 257 N. W. 434, 436, 97 A. L. R. 535; Kadlec v. Johnson Construction Co., 217 Iowa 299, 252 N. W. 103." Townsend v.

Armstrong, 220 Iowa 396, 403, 260 N. W. 17, 21. Again in the same case, speaking of the loss of visibility, the court said: "He knew of his entire loss of visibility and, under our general rule, he was required to stop before going forward. If he went forward under such circumstances, he did it at his own hazard and risk."

In the case of Greenland v. City of Des Moines, 206 Iowa 1298, 1301, 221 N. W. 953, 954, we again said:

"When visibility was lost, the car should have stopped. It availed him nothing to carry automobile lights if his windshield was obscured. The loss of visibility and the venture of the driver to proceed without it were clearly the proximate cause of this accident."

In the Thierman case, supra, is this further quotation:

"If, then, the driver of an automobile, because of the defective lights, cannot see more than ten feet ahead of his car, he must so control the same that he can stop it if necessary within such radius of the lights."

In the instant case, when the plaintiff lost visibility because of the lights of the approaching car, he should have reduced his speed so that when he lost all visibility he could stop immediately. Had he done this, the accident in question would not have occurred.

It will be noticed from these cases that the rule is laid down emphatically that speed must be reduced accordingly as visibility is reduced. We have here, however, a little different situation. At the time these lights refused to work, according to the testimony, appellant's driver was operating his car at a speed which would enable him to stop within the distance that he could discern an object in the highway. The visibility was 35 feet. His testimony was that he could probably stop within 20 to 25 feet. Therefore he was within this rule insofar as speed was concerned up to the moment his lights went out. If we apply it literally to the instant case then the appellant would be negligent if his car moved ahead six inches after the lights went out. Of course it was his duty to stop and not proceed blindly.

■■■ In passing on this motion it was the duty of the court to construe the evidence in the light most favorable to appellant.

■■■ Here is the driver's story:

894

"When the approaching car passed me I put my bright lights on high, but they didn't trip on; I pushed the button a couple of times but it didn't work and I tried to use the brake, and while I was reaching for my brakes I turned on my other light; the other light is an emergency road lamp located on the front bumper; I must have been about 50 feet from the rear end of the McCord truck at the time the other car passed me going in the opposite direction. There isn't much difference in visibility in a fog with the lights on dim than when on high. Our lights penetrated the fog that night so as to be able to discern an object on the highway about 35 feet away. I was not very long trying to put the lights on before I tried the brakes; the minute the lights didn't come on I started using the foot brake; I used the foot brake first and then reached for the emergency light and turned that on. I then saw the McCord truck right ahead of me, not over 10 or 15 feet away. I probably was about 35 to 40 feet back of McCord's truck when I first applied my brake. I had been slowed down somewhat by the brakes and I don't believe I was traveling more than 10 to 15 miles per hour when I first saw the McCord truck 10 feet away. I attempted to swing out but I couldn't because it was slick. The brakes weren't catching. The wheels slipped when I turned and I released the brakes. I hit the left rear corner of McCord's truck; the right front end of our truck was hit; the cab was demolished. There was some mud on the pavement where they had been driving cattle across. I probably could stop the outfit in 20 to 25 feet under the conditions then existing. It takes a little time to apply the brakes. I used the foot brake—not emergency. I meant that the truck would probably stop in 25 feet after the brakes were on. I can't stop any quicker with emergency brake than with foot brake because of slippery pavement. If the roads were dry at the time and place of the accident under the circumstances as they were that evening and with the load on my truck, I believe our truck could be stopped with the brakes we had within 20 feet. I was about 10 feet from the rear end of McCord's truck when it first loomed in sight. The road was a little more slippery at the point where the road led into the field than at other places on the highway. I was about 15 feet back of the rear end of McCord's truck when I first applied my brakes after the lights went out and about 10 feet from the rear end of the truck when I first saw it. I was about

15 feet back when I started to apply the brake and I traveled about 35 feet during the time I was attempting to put the lights on.''

In announcing legal principles governing the conduct of individuals, care should be taken not to require the impossible. There must be enough elasticity in the rule to render it reasonably practicable and capable of observance. No better measure has ever been devised than that known as the ordinarily prudent person standard. What then, would an ordinarily prudent person have done under the circumstances? The trial court by his ruling says as a matter of law he would have first applied his brakes. We confess it is a close question, very troublesome and difficult, but under all the facts and circumstances in this case, we are inclined to hold that this matter should have been submitted to the jury under proper instructions.

It therefore follows that the trial court was in error in sustaining the motion to direct the verdict, and the case must be and is reversed.—Reversed.

RICHARDS, C. J., and all Justices concur.