Roy Newman, Appellee, v. W. E. Hotz, Appellant.

No. 44673.

April 4, 1939.

Grimm, Elliott, Shuttleworth & Ingersoll and Putnam, Putnam, Fillmore & Putnam, for appellant.

George C. Claassen, for appellee.

Oliver, J.—This is a companion case to Sarah Newman v. W. E. Hotz, No. 44620, 226 Iowa 834, 285 N. W. 287, opinion by Justice Sager. Both cases arose out of the same accident and were presented upon substantially the same record. Sarah Newman, wife of appellee herein, was riding in the car driven by him at the time in question. The several propositions assigned as errors in this case were with one exception presented in the Sarah Newman case and decided adversely to appellant herein. Therefore, said decision will be considered the law of this case, and we will pass to the one principal question not considered therein, to wit: Was the appellee, Roy Newman, guilty of contributory negligence as a matter of law?

Appellee was driving his automobile from Center Point to Cedar Rapids in the early evening of November 27, 1935. It was misting with occasional snow flurries, there was some fog

and very poor visibility, and the pavement was wet, slippery, shiny and black. Near Cedar Rapids was a straight and practically level stretch of pavement twenty feet wide and about one-half mile in length over which appellee traveled southeast. At the southeast end of this stretch the road swung sharply upward to a viaduct passing over railway tracks.

As appellee's car entered this half-mile stretch it was getting darker, it was a rather low area, the mist was somewhat thicker and timber and tall trees on both sides of the road caused it to be "a denser black along there". Appellant's car was standing on the highway directly in appellee's lane of travel, facing the viaduct at a point several hundred feet northwest therefrom, but near enough that the viaduct in front of it cut off the view of the horizon behind it from anyone approaching from the northwest. Said car, a 1925 Dodge, was dirty, and its dark paint was faded almost gray. There was evidence that neither the rear lamp nor the headlights were lighted.

Appellee drove down this stretch at a constant speed of 30 to 33 miles per hour, his windshield wiper working and his headlamps lighted. His range of visibility for some objects at least was approximately 50 to 60 feet, and he could stop the car within about 40 or 50 feet. He was looking straight down the road, saw no lights nor objects of any kind, and did not see the Dodge car before he drove his car into its rear end.

Mrs. Newman thought appellee started to turn out an instant before the crash. Although her side of the windshield was not clear, she saw the Dodge car when appellee's car was several feet from it. Her statement that "you couldn't see it, it blended right in with the pavement", should be considered in the light of the fact that she did see it through the mist-covered windshield. Mrs. Newman also said, somewhat in contradiction to appellee's testimony and other parts of her testimony, that the trees appeared to cast shadows across the road.

It may be here noted that appellee's car was followed by a car driven by one Wolfe, apparently, however, at such distance that neither appellee nor his wife noticed its headlights in their rear. Wolfe, after seeing the two cars blocking the highway, could not stop his car in time to avoid striking them, though he was able to reduce its speed considerably from the 35 mile rate it had been traveling. Also of interest is the testimony of appellant that he stood in the rear of his car and waved

a flashlight in an attempt to warn appellee, and that some other cars passed while his automobile was standing upon the highway.

During all the time appellee was driving more than one-third mile down this road it appears that there was no change in visibility or surrounding conditions. There was no evidence of any emergency or of anything that might be considered a diverting circumstance. Appellee made no effort to stop or decelerate his automobile before the crash. He simply drove into the rear of the parked car without observing it, although it was directly in his front and in the field illuminated by the headlights of his car. It would appear that appellee should have discovered the parked car before his wife was able to see it. His only excuse for his failure to see it was that the night was misty, foggy and densely black, and the car was of a color which made it difficult to distinguish against the road and the background of the viaduct.

This court held in Kadlec v. Johnson Construction Co., 217 Iowa 299, 305, 252 N. W. 103, 106, that a driver was not necessarily guilty of contributory negligence in striking the rear of an unlighted truck on a highway. In that case the truck was very wide, was stained with cement and obscured by shadows cast by street lights through overhanging foliage. The court said:

"If an object on the highway is undiscernible or becomes undiscernible by reason of some peculiar facts or circumstances beyond the driver's control, it would be unreasonable to hold him responsible therefor."

A somewhat similar holding was in Kimmel v. Mitchell, 216 Iowa 366, 368, 249 N. W. 151, where the attention of the driver was diverted by the headlights of the standing truck which shone into an adjoining field. Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, allowed recovery for damage to an automobile which struck the rear of a truck proceeding ahead of it without a taillight on a rather dark and foggy night just after passing over the top of a hill and meeting the lights of an approaching car. In each of the foregoing cases the driver of the car did see the offending vehicle, but too late to avoid the collision. In Hart v. Stence, 219 Iowa 55, 257 N. W. 434, 97 A. L. R. 535; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N.

W. 822; and Shannahan v. Borden Produce Co., 220 Iowa 702, 263 N. W. 39, the driver of the car which struck the rear of the unlighted truck in the nighttime was held guilty of contributory negligence as a matter of law. It may be observed that in none of these latter cases was the vision of the driver impaired by weather conditions which in the case at bar may have made the discernment of the parked car more difficult. Furthermore, in each of said cases, except the Shannahan case in which the collision resulted in the death of the driver, there was positive evidence that the parked truck was discovered prior to the collision.

None of the cited cases are exactly in point with the case at bar. However, we think that in the absence of proof of any sudden change in conditions, or of any emergency or diverting circumstances it must be held that appellee failed to produce evidence which would legally excuse his failure to see the automobile in the path of his car. An object of such size must have been made visible by the headlights of his car. We are constrained to hold that the record shows appellee failed to keep a proper lookout and accordingly was not free from negligence contributing to the accident and his consequent damage. For that reason appellant was entitled to a directed verdict.

Wherefore, the judgment is reversed.—Reversed.

HAMILTON, SAGER, STIGER, HALE, and MILLER, JJ., concur.