R. T. REMER, Appellee, v. TAKIN BROS. FREIGHT LINES, INC., et al., Appellants.

No. 45448.

April 8, 1941.

Reed & Beers and Perrine & Albright, for appellants.

G. P. Linville and W. R. Watsabaugh, for appellee.

GARFIELD, J.—A previous trial of this case resulted in a verdict for plaintiff of $7,291.95. Upon defendants' appeal to this court, the case was reversed for error of the trial court in instructing on the measure of damages. See 227 Iowa 903, 289 N. W. 477. The present appeal by defendants is from a verdict for plaintiff of $7,000 upon the retrial resulting from the previous reversal. The facts as to how the accident happened are fully stated in the former opinion and we will not repeat them here. One of the principal points urged upon us is that the verdict is excessive. This is a matter not considered in the previous opinion. It will therefore be necessary for us briefly to mention the evidence bearing on the extent of appellee's damage.

The accident occurred on December 26, 1937. Appellee was then 45. He was president of a bank at Center Point, with branches at Walker and Coggon. He had been a banker all his adult life. He had always before been in good health and was a strong, able-bodied man. He had been a college athlete. At the time of the accident appellee, standing on the parking, was knocked violently to the ground by a pickup truck which was "hurled up over the curb and onto" him by the heavy Takin Bros. truck. He was confined to a hospital for four weeks; then convalesced at home for a month and a half, most of the time in bed.

Appellee suffered a severe permanent injury to the muscles, ligaments, and blood vessels of the upper front part of the right thigh, and a like injury to the rear in the region of the right buttock. For several days following the accident he was unable to urinate and it was necessary to use a catheter. Blood was present in the urine. The kidneys, however, were apparently not permanently injured. There was also a crack in the pelvic bone but no bone displacement resulted, and it is not claimed this injury was permanent. A considerable quantity of scar tissue formed in both the region of the thigh and the buttock. A sac or pocket formed in the buttock which filled with degenerated blood and serum. This growth, the jury could have found, is as large as two hot-water bottles. It was drained at different times and nearly a gallon of fluid withdrawn on each occasion. Appellants make much of the fact that it was not drained

after December 1938. However, the sac contained a considerable quantity of "serum" at the time of the second trial in March 1940. This growth caused the right buttock to droop and the body to lose its symmetry.

Appellee's injuries permanently obstructed the flow of blood from the right leg, causing the thigh and leg to be one to two inches larger than the other thigh and leg. There is evidence that the entire leg would be swollen two inches more after a day's work at the bank than it was in the morning; that the leg was numb and cold; that the flesh was flabby and, when pressed by the finger, a hole in the skin would be left temporarily; that gangrene is associated with such an injury at times and is more likely to occur than in a normal limb. Appellee's injuries caused a halting walk and a considerable curtailment of his normal activities. For example, he is prevented from acting as clerk at farm sales which had brought him an annual income of about $200 in addition to his salary of $2,600 from the bank. He is unable to mow his lawn, tend his garden, care for his furnace, and the like. He is also unable to go hunting, play golf, or engage in other sports.

In addition to the foregoing, the long finger on the right hand was injured. The end joint became permanently stiff and straight. This is a decided inconvenience in using the typewriter, adding and posting machine, in writing and counting out money at the bank.

There is no claim there will be any material improvement in appellee's condition.

There is much testimony of appellee's intense pain and suffering. At the hospital frequent injections of morphine were administered. The second trial was held about 27 months after the accident. There is evidence that appellee suffers continuous pain and discomfort at all times except when asleep; that it is hard for him to sleep because of his injuries, and he frequently resorts to sedatives; that he "cannot lie in any one position any length of time;" that after a hard day at the bank the enlargement on his buttock "aches like a toothache."

Appellee's expenditures for hospital, ambulance and medical services were $317.25; the damage to his clothing was $25. The jury could have found that he was damaged by loss of

time following his injuries in the sum of $542. The total of the foregoing items is $884.25.

■■ I. We are not prepared to hold that the verdict for $7,000 was excessive or the result of passion and prejudice. Ordinarily, the assessment of unliquidated damages is peculiarly within the discretion of the jury. While it is true this discretion is not unlimited, courts usually will not interfere unless the verdict is so large or so small as to shock the conscience. See Rogers v. Jefferson, 226 Iowa 1047, 285 N. W. 701; Crawford v. Emerson Co., 222 Iowa 378, 269 N. W. 334; Manders v. Dallam, 215 Iowa 137, 244 N. W. 724; and cases cited in these decisions.

The size of the verdict upon each trial was substantially the same. Two judges of wide experience presided at the respective trials. The judge and jury upon each trial observed appellee and at least part of his injuries. They had a much better opportunity than have we to measure the character and extent of the injuries. Each judge permitted the verdict to stand against appellants' attack on the amount. The evidence as to the extent of appellee's disability was fully as strong upon the second trial as upon the first. It is a fair deduction that there was no substantial improvement in appellee's condition during the 15 months between the two trials. This tended to confirm appellee's claim that his injuries are permanent. To interfere because of the size of the verdict under this record would be an invasion of the province of the jury. We have carefully read the cases cited by appellants on the size of the verdict but find nothing inconsistent with the conclusion above reached.

■ II. The next assignment of error is the overruling of appellants' motion for continuance made during the progress of the trial. The motion was based on the claim that appellee as a witness informed the jury that appellants carried liability insurance.

On cross-examination by appellants' counsel, appellee was asked, "When did Dr. Grayston advise you to wear a rubber stocking on your leg?" He answered, "When the insurance company's doctor examined me in his office a week ago last Thursday." After two further questions and answers, the

jurors were excused at the request of appellants' counsel, the motion for continuance was made and overruled. By consent of appellee's counsel the words "insurance company" were stricken.

Appellants had caused appellee to be examined by one Dr. Files "a week ago last Thursday." This was all brought out by appellants when they called Dr. Files as their witness *after the cross-examination of appellee.* Dr. Files, in the presence of Dr. Grayston (appellee's own doctor), had advised the wearing of a rubber stocking. Dr. Grayston apparently concurred in this advice. The answer to which appellants object was at the conclusion of their cross-examination after appellee had been recalled for further examination. When appellee was previously a witness and during the prior cross-examination, appellants' counsel had fully developed the fact that two doctors had told him that a rubber stocking might reduce the swelling in his leg, but that he had not tried the stocking.

Appellants generously say in argument, "Counsel [for appellee] carefully abstained from making any allusion to insurance throughout the trial * * * no claim is made that counsel had anything to do with plaintiff's statement." It will be noticed that the answer of appellee does not refer to appellants' insurance company and is quite indefinite as to liability insurance.

Appellants claim the issue of insurance was designedly injected into the trial. Appellee contends the answer was innocently given. The trial judge saw and heard all that transpired. He seems to have given careful consideration to the matter and concluded there was no improper motive. We think the record sustains the conclusion that the mention of insurance was merely incidental or by accident and not by design. As having some bearing, see Albert v. Maher Bros., 215 Iowa 197, 214, 243 N. W. 561; McCoy v. Cole, 216 Iowa 1320, 249 N. W. 213; Bauer v. Reavell, 219 Iowa 1212, 260 N. W. 39.

This question is discussed in the recent case of Floy v. Hibbard, 227 Iowa 154, 157, 289 N. W. 905, 907. Attention is called, however, to a typographical error in one sentence in the Iowa report which changes the entire meaning of the statement

of law there made (middle of page 157 of 227 Iowa). The sentence should read:

"A distinction has been made between diligent suggestion and the mention of insurance in answer to a question involving a conversation relating to other material matters; and where such mention has been merely incidental courts have *not* ordinarily held it to be error." The word "not" is omitted from the Iowa report. It appears in the Northwestern (middle first column, page 907 of 289 N. W.).

Appellant Takin Bros. Freight Lines, Inc., was engaged in transporting freight for hire and was required by law to carry insurance. (Section 5100.26, Code, 1939.) We have held that this, in connection with the fact that jurors are presumed to know the law, is a matter properly to be considered on the question whether a new trial should be granted because of the mention of insurance. See Keller v. Dodds, 224 Iowa 935, 277 N. W. 467.

III. In defining the term "assured clear distance ahead," the trial court's instructions stated in substance that the term relates to the range of visibility of the driver; that he must so operate his vehicle that he can stop within the range of visibility ahead, whether he may be close to or distant from any preceding object then on the highway. Appellants' exception to this instruction is that it is incomprehensible and impossible of application, ambiguous and confusing.

The definition used by the trial court is probably not the one usually given of the term "assured clear distance ahead." The more common definition, and the one which has been repeatedly approved by this court, is the distance that discernible objects may be seen ahead of the car. Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893; Engle v. Nelson, 220 Iowa 771, 781, 782, 263 N. W. 505; Monen v. Jewel Tea Co., 227 Iowa 547, 551, 288 N. W. 637. Nevertheless we are not prepared to hold that the instruction is essentially different from the one we have repeatedly approved, nor that it is vulnerable to the attack made upon it by appellants. See Mueller v. State Auto Ins. Assn., 223 Iowa 888, 274 N. W. 106, 113 A. L. R. 1256, where, in referring to the assured clear distance rule, we say

(page 893 of 223 Iowa, page 108 of 274 N. W.) "speed must be reduced accordingly as visibility is reduced." The cases are discussed in a note in 24 I. L..R. 128. In the recent case of Roberts v. Koons, 230 Iowa 92, 296 N. W. 811, although a case involving recklessness, we use the term "assured clear distance ahead" much as did the trial court, at page 98 of 230 Iowa, page 814 of 296 N. W.:

"What appellant did was to continue to drive * * * without decreasing the speed of his car *when the visibility was temporarily* reduced. * * * The Ford could not be stopped within the assured clear distance ahead." (Italics supplied.)

In considering this alleged error it is proper for us to observe that the identical instruction here complained of was given by the trial court upon the first trial of this case as a part of instruction No. 9. The attack upon it in the former appeal was principally that the assured clear distance doctrine was not applicable to the case. We held that attack to be without merit. (See page 911 of 227 Iowa, page 481 of 289 N. W.) Counsel for appellants in their brief upon the former appeal said of the identical language now claimed to be incomprehensible:

"We have no particular quarrel as to its statement of the law but simply claim that it had no applicability to this particular case. In other words, it would appear to us that the Court gave a reasonably good instruction on the 'assured clear distance' rule in a case where it was not involved."

 IV. It is claimed the instruction on measure of recovery is erroneous in that it did not limit recovery to the amount shown by the evidence. The record does not support this assignment of error and we find it to be without merit. In instruction No. 26, the one complained of, the jury was told that if they found for plaintiff, it was their duty to fix the amount they felt plaintiff entitled to · recover, under all the evidence. Further, instruction No. 24 expressly told the jury that no more could be allowed by them for any item of damages than had been established by a preponderance of the evidence. A reading of the instructions shows that the trial court very carefully avoided the. error on which the case was reversed on the former appeal.

298

V. The remaining errors assigned are that the verdict is contrary to the undisputed physical facts and that the court erred in one of its instructions relating to the third and fourth specifications of negligence. Substantially the same record in these respects was made upon the former trial. The same contentions were made by appellants and considered by us upon the former appeal and held to be without merit in the former opinion. We have again given these matters careful consideration and find no reversible error.

The judgment is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.