HERBERT B. BLOWERS, Appellant, v. WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY, C. M. CHENEY, Receiver, Appellee.

No. 46098.

NOVEMBER 17, 1942.

REHEARING DENIED AND OPINION MODIFIED APRIL 9, 1943.

R. P. Birdsall and McCoy & Beecher, all of Waterloo, for appellant.

Swisher, Cohrt & Gillilland, of Waterloo, for appellee.

MITCHELL, J.—Herbert B. Blowers, the appellant, was a resident and citizen of Waterloo and had been for some years.

The appellee, Waterloo, Cedar Falls & Northern Railway Company, owned and operated the street-railway system in the city of Waterloo and also operated interurban cars between Waterloo and Cedar Rapids. Lafayette Street in the city of Waterloo is paved and runs in a northwesterly and southeasterly direction. Interurban tracks extend down Lafayette Street from East Fourth Street to and beyond the city limits, and between Rhey Street and Linden Avenue there is what is described as a passing track. It is used for streetcars or interurban trains to pass each other. The tracks are located in and are a part of the traveled portion of Lafayette Street. The paving is thirty-eight feet wide from curb to curb. It is ten feet eight inches from the southwesterly rail of the southwesterly track to the southwesterly curb. The passing tracks are six feet apart and there are five feet between the rails of each track. The street is level.

On Saturday night, January 13, 1940, there was a heavy falling snow, which continued intermittently until January 15, 1940. In order to clear the snow from its tracks the appellee company used its snow sweeper, and on Sunday, January 14, 1940, parked or placed its snow sweeper on the right-hand side passing track as one proceeds southeasterly on Lafayette Street and located between Rhey Street and Linden Avenue. It was placed on this passing track on Sunday and it was still there between 11 and 12 o'clock on the night of January 15th, which was Monday. The sweeper, or plow as it is sometimes referred to, had pushed the snow to the curb and there were banks four feet high at each curb. There was room to go through between the right-hand side of Lafayette Street and the sweeper. The appellant, about 11:15 on the night of January 15th, started from the main part of Waterloo to go to his residence out on Lafayette Street. He approached the sweeper at about eighteen miles per hour. He was driving a Ford car with lights in good condition, with which he testified he could see discernible objects one hundred feet ahead and lights on approaching cars one hundred and fifty to two hundred feet. His brakes were working. The street was icy and very slippery at the place of the accident. He testified he was looking straight ahead and driving pretty well toward the center of the street. It was snowing at that

time and as he drove along he could see the snow piled up about four feet high along the edge of the street. He did not see the sweeper and crashed into the northwesterly end of the sweeper, injuring himself. The sweeper is described as being approximately thirty-five feet long, ten feet wide and ten to twelve feet high. There is evidence that it was completely covered with snow. On the front of the sweeper was a large brush. The brush rotated from the bottom to the top and would throw snow on the top of the sweeper.

The appellee's motion for a directed verdict, which was sustained, contained four counts. There can be no question that this record shows that the sweeper of the appellee company was left standing on this passing track which was located in the center of Lafayette Street, a street used by the citizens of that city and open for travel for those who desired to use it.

There were no lights or flares or warning signals upon the sweeper or anywhere near it. Clearly, under this record, the question of the negligence of the appellee company in leaving this unlighted and unprotected sweeper on one of the streets in the city of Waterloo for a matter of two days and two nights was for the jury to determine. In fact, the only question raised by the motion to direct which is argued seriously is the question of contributory negligence. We quote from the appellee's brief:

"We believe that the question of contributory negligence is controlling in this case and are confining our Brief and Argument to that question.

"As the question of contributory negligence is involved in each Division of the Appellant's Brief and Argument, we are considering all Divisions of Appellant's Brief and Argument in one Division."

The appellee argues that the appellant was bound to see the sweeper, which was within the range of his vision, and his failure to do so was contributory negligence (citing many Iowa cases, including Newman v. Hotz, 226 Iowa 831, 285 N. W. 289; Shannahan v. Borden Produce Co., 220 Iowa 702, 263 N. W. 39; Hart v. Stence, 219 Iowa 55, 257 N. W. 434, 97 A. L. R. 535); and that he was guilty of contributory negligence because he failed to observe the provisions of the assured-clear-distance-

ahead statute. In determining this issue we must accept the evidence most favorable to the appellant, together with all reasonable inferences that may be drawn therefrom, for the appeal is from the ruling sustaining the motion for a directed verdict by. appellee.

This snow sweeper was on the track located in this traveled street within the limits of the city of Waterloo. While appellee in its brief and argument says that it was not completely covered with snow, there is evidence from which the jury could have found that the sweeper was completely covered with snow; that there were no lights or flares or warning signals of any kind; that this car was not waiting for passengers and it was permitted to remain there for better than forty-eight hours, there being no reason shown that there was any purpose that would permit it to remain for such a length of time. It was a dark night and snowing. The appellant's car was properly equipped with lights and brakes. He was looking ahead. He did not see this object until he crashed into it. On the front of the car was a large brush which rotated and threw snow up on the sweeper. There were snowbanks along the side of the street. He was traveling between sixteen and eighteen miles per hour.

We have been confronted with the assured-clear-distance-ahead statute [section 5023.01, Code, 1939] in many cases. In all of our cases, we have held that the object must be a discernible one. In Lindquist v. Thierman, 216 Iowa 170, 178, 248 N. W. 504, 508, 87 A. L. R. 893, we said:

"Consequently, it is evident that the words 'within the assured clear distance ahead', as used in the statute, signify that the operator of the automobile, when driving at night as well as in the day, shall at all times be able to stop his car within the distance that discernible objects may be seen ahead of it."

So the question in the case at bar is, Was this object, placed in the center of this street which was used by the people of Waterloo, on this dark wintry night, with snow falling, covered as it was with snow, a discernible object? The appellant's evidence shows that his lights were in good condition, that he could see a distance of better than one hundred feet; that he was traveling at a slow rate of speed, to wit, sixteen to eighteen miles

an hour; that he was at all times looking ahead; that he did not see this object until he crashed into it. In addition to the evidence of the appellant himself, there is testimony of disinterested witnesses, one of them a deputy assessor, who testified that on this same evening of January 15th, while driving along Lafayette Street, he could not see this object until he was "right on top of it." He was so impressed with the danger of this sweeper remaining in the street that he called the appellee company and notified it of the traffic hazard on Lafayette Street. There is testimony of a doctor who on this very evening passed this way, saw no lights upon the sweeper, and did not see the sweeper until he was within ten or fifteen feet of it. There is the testimony of another witness who on January 15th drove along this same street, tried to pass the sweeper. He says the brush on the front of the sweeper set out at an angle. It was sticking out a good foot from the side of the sweeper, and he hit the end of the brush. His lights were in good condition and he could not see the sweeper until he was within fifteen feet of it, and then, on account of the slippery condition of the street, although his brakes were in good condition, it was not possible for him to stop. So here we have another driver rightfully upon that street who collided with this same object on the same evening. Another witness who was riding as a passenger in another car passed along Lafayette Street on the evening of January 15th, and he testified that he did not see the sweeper until they were within fifteen feet of same. In the case at bar, there is not only the evidence of the appellant but the evidence of these three other witnesses, all of whom testified that this object was not discernible until they were practically "right on top of it."

But the appellee says that this case is controlled by Newman v. Hotz, 226 Iowa 831, 285 N. W. 289. With this we cannot agree, for in that case there is evidence the car was being driven at a speed of between thirty and thirty-three miles per hour, with the visibility ahead of from fifty to sixty feet, while in this case the appellant was driving carefully at a speed of sixteen to eighteen miles per hour, with a visibility of one hundred feet for discernibility. In the Newman case, the plaintiff's wife was seated beside him on the night of the accident, as they drove

along the road, and was able to discern the defendant's car, although she had to look through the windshield which was covered with mist and fog. Thus we find that in that case the automobile was discernible, while in this case the appellant testified that he did not see this object until he collided with it. The question which we are confronted with here is whether or not this was a jury question. Can we say as a matter of law, in face of this record, where the appellant testifies he did not see the sweeper, and where these other three disinterested witnesses testify that it was not discernible until they were "right on top of it," that it was a discernible object?

In the case of Mueller v. State Automobile Insurance Assn., 223 Iowa 888, 895, 274 N. W. 106, 109, 113 A. L. R. 1256, this court, speaking through Judge Hamilton, said:

"In announcing legal principles governing the conduct of individuals, care should be taken not to require the impossible. There must be enough elasticity in the rule to render it reasonably practicable and capable of observance. No better measure has ever been devised than that known as the ordinarily prudent person standard. What then, would an ordinarily prudent person have done under the circumstances? The trial court by his ruling says as a matter of law he would have first applied his brakes. We confess it is a close question, very troublesome and difficult, but under all the facts and circumstances in this case, we are inclined to hold that this matter should have been submitted to the jury under proper instructions."

There was evidence that this sweeper had been on this street for better than forty-eight hours; that there were no lights, flares, or warning signals; that it was covered with snow and on the front it had a rotating brush that stuck out one foot. Under this record, whether or not it was a discernible object was a question for the jury to decide, and the lower court erred in sustaining the motion to direct a verdict. It necessarily follows that this case must be, and it is—Reversed.

HALE, OLIVER, SAGER, STIGER, BLISS, and GARFIELD, JJ., concur.