## SMITH, Plaintiff, v. DURST, Defendant.

Common Pleas Court, Meigs County.

No. 12934.   Decided August 11, 1960.

Crow, Crow & Porter, Pomeroy, for plaintiff.
Bolin & Walker, Athens, for defendant.

## OPINION

By BACON, J.

Plaintiff asks a new trial following a directed verdict for defendant. His argument citing "sudden entrance of discernible object into lane of traffic" line of cases does not shake this court's conclusion that plaintiff indisputably violated the "assured clear distance" requirement of Ohio's Traffic Code.

The facts are almost uncontradicted.   Plaintiff testified in substance as in his deposition made a few months ago.

"I was going to work and was on Route 124 coming to Ravenswood. It was raining drizzly rain. When I come to this crest of the hill I tapped my brake constantly and drove up over the hill in that road. Soon as I broke over the peak of it I seen this truck setting in the road. . . . When I applied the brakes the second time when I was going over this rise, I put them on hard when I seen the truck. . . . I pushed on the brake when I seen the truck . . . . the truck was cross the road."

As in his deposition, the plaintiff estimated his speed as moderate, between 25 and 50 MPH, acknowledged that he was thoroughly familiar with that stretch of Route 124.

Depositions of plaintiff's witnesses read in evidence added little. Plaintiff waved to them in Long Bottom and they immediately followed in another automobile driving 55 or 60 MPH, save where curves, as the road followed the Ohio River, required lesser speeds. They kept the plaintiff's car in sight and one of them remarked, as plaintiff topped the crest plaintiff describes, "Smitty's car is turning." They saw plaintiff's car disappear over the crest, and arriving at the scene found it had come to rest against the rear of the 2½ ton yellow highway truck 176 feet from the hillcrest.

Plaintiff also testified, not as sharply as black and white but to the effect, that he intentionally drove into the ditch and bank along the right edge of the road to avoid striking the truck. This was fairly consistent with his statement in his deposition that:

"I pushed on the brakes when I seen the truck and pulled too far out to the margin of the road and the car just slid into the bank and off the bank into the truck. The truck was cross the road."

Whether negligence was involved in the position of the highway truck is irrelevant to the issue whether plaintiff was operating his automobile at a speed which would permit him to bring it to a stop within the assured clear distance.

Plaintiff avers that upon the legal principles announced in **Hangen v. Hadfield, 135 Oh St 281, 20 N. E. 2d 715, 14 O. O. 144**, he is entitled to have a jury determine whether he was contributorily negligent.

Defendant insists, and this court agrees, that under the law of **Smiley v. Arrow Spring Bed Co., 138 Oh St 81, 33 N. E. 2d 3, 20 O. O. 30, 133 A. L. R. 960, 9 NCCA (NS) 699**, he was entitled to a directed verdict, that under the evidence reasonable minds could not differ that plaintiff was driving his automobile at a speed greater than would permit him to bring it to a stop within the assured clear distance.

Judge Hornbeck said in **Dye v. Spahn, 34 Abs 123, 36 N. E. 2d 425**:

"When and if facts come to the attention of a trial judge wherein the differentiation must be made between the law of Smiley v. Spring Bed Co., and Hangen v. Hadfield . . . . it will require great erudition to frame the appropriate charge."

This is not true. Save in the matter of the motorist's right to assume that the road is free of obstruction, the Hangen case can be reconciled with the Smiley case. Actually the rule is not involved in the Hangen case. There was never any assured clear distance! Hangen as he topped the hill did see Hadfield 250 feet away. But Hadfield him-

self denied Hangen an assured clear distance by driving towards him in Hangen's traffic lane at 35 to 45 MPH.

So in determining the correctness of the application of the statute to plaintiff's conduct according to his own and his witnesses' testimony, we must look to cases where an assured clear distance was actually involved.

Voltaire said: "Let all laws be clear, uniform and precise; to interpret laws is almost always to corrupt them." Although our law is clear, uniform and precise, there has been some corruption by interpretation, mostly by the lower courts. So far the Supreme Court has been fairly firm in standing by the salutory pronouncements in the Smiley case.

Plaintiff's counsel in his brief suggests that by reason of the opinion in **McFadden, Admx., v. Breuer Transportation Co., 156 Oh St 430, 46 O. O. 354, 103 N. E.** 2d 385, and Judge Stewart's comment in his concurrence that it was "a step away from the strict and rigid rule announced in Smiley v. Arrow Spring Bed Co., there has been a "reversion to the doctrine of the Hangen case in each and every case considered by the Supreme Court thereafter."

But Judge Stewart in **Bickel v. American Can Co., 154 Oh St 380, 96 N. E.** 2d 4, 43 O. O. 259, had referred with apparent approval to the "exhaustive review" made by Judge Hart in the Smiley case, and applied the rule, adding,

"It may be said in a case like the present one the assured-clear-distance statute creates a harsh rule, and this is true. It is a rule, however, not formulated by the courts but declared by an enactment of the General Assembly which doubtless had in mind the creation of a hard and strict rule of conduct in order to attempt to lessen the tragic increase of automobile casualties which so grievously afflict this nation."

Judge Stewart had 1950 statistics. A few more can now be added. In 1951 Ohio traffic 1200 persons were slain. That year the motor car's one millionth reported victim was an Ohioan. By 1956, annual motor car fatalities crashed through the 40,000 mark. A record 706 were killed during the four-day Christmas observance.

In July 1960 the state director announced that Ohio's traffic fatal' ties were leading the nation.

We are advised by Dr. T. R. Van Dellen, health advice columnist. that one out of every 10 persons living today will be killed or injured in a traffic accident in the next 15 years; that according to Dr. Ross A. McFarland of Harvard, 80 to 90 percent of motor vehicle accidents result from failure on the part of drivers. As Dr. Van Dellen says, the driver is the most important part of the automobile. He alone controls the speed of the car. His attitude toward other drivers, speed limits, and taking risks is a factor in accident prevention.

While these alarming truths of the slaughter on our highways do not bear upon whether the plaintiff was violating the rule, they are likely to be in mind whenever the Supreme Court is called upon to decide the future of Smiley case law, and may be a factor whenever

that court strikes down the corrosive interpretations attempted by the lower courts.

In a case cited by plaintiff's counsel, **Glasco v. Mendelman, 143 Oh St 649, 56 N. E. 2d 210, 28 O. O. 522,** Judge Bell commented as to the assured clear distance statute:

"That provision was passed in the interest of the public safety and prescribes an absolute rule of conduct. It is well settled that failure to conform thereto is negligence per se."

In another case cited by plaintiff's counsel, **Erdman v. Mestrovich, 155 Oh St 85, 97 N. E. 2d 674, 44 O. O. 97,** A. L. R. 2d 1417, Judge Hart speaking on §6307-21 GC (now §4511.21 R. C.), said:

"The most important factor within the purview of this statute is the phrase, 'within the assured clear distance ahead.' The 'assured clear distance ahead' constantly changes as the motorist proceeds and is measured at any moment by the distance between the motorist's car and the limit of his vision ahead, fixed by the skyline, darkness, rain or snow, fog or smoke, a hill ahead, a curve in the highway, or by the distance between the motorist's car and any intermediate discernible static or forward moving object in the street or highway ahead constituting an obstruction in the motorist's path or lane of travel."

In the Smiley case defendant's truck became disabled after dark and it was left parked on the highway without lights.

Plaintiff ran into it, sought to avoid the statute by maintaining that the truck was only 30 feet beyond the crest of a hill, that he was blinded by lights of another vehicle approaching from the opposite direction while at moment of impact was passing the truck.

Judge Hart, after the exhaustive review mentioned by Judge Stewart, settled that:

"As has been shown from the adjudicated cases, the fact that the motorist's view is limited by the crest of the hill does not warrant his driving at such speed as to preclude him from stopping his car within the assured clear distance that may be afforded after he reaches the crest of the hill. Likewise, the interference with the view by the lights of automobiles approaching him from the opposite direction, does not constitute any excuse for failing to keep his car within control so that it may be stopped before colliding with an obstruction in front of him. The statute has been adopted by legislative action to secure safety in travel on the highways. So long as it remains in force and effect it must be observed."

Immediately preceding, the astute jurist had stricken down the excuses of plaintiff with these words:

"In the instant case, the plaintiff seeks to avoid the application of the rule on the ground that the unlighted truck was located in his path of travel just over the crest of a hill which cut off his view of the truck ahead, and that he was blinded by the lights of an automobile coming from the opposite direction. . . . There is a conflict in the evidence as to where the truck was parked and where the collision occurred in relation to the crest of the hill, but even if the parked truck was beyond the crest of the hill, as claimed by the plaintiff, that furnished no excuse for colliding with the truck."

And earlier, at page 88, the astute jurist stated:

". . . . it has been suggested in certain cases that the driver of an automobile in operating his car has a right to assume, until he has notice to the contrary, that others on the highway will obey the law. Under ordinary rules of negligence this is true, but in light of the requirements of the statute under consideration, the rule . . . has little, if any, application. The statute is a safety regulation and imposes upon the operator of a motor vehicle at all times the unqualified obligation to be able to stop his car within the distance that discernible objects may be seen. By force of the statute the motorist may therefore assume nothing that is not assured to him by the range of his vision."

From this Judge Turner in his dissent recognized that the rule announced in the third paragraph of the syllabus of the Hangen case henceforth would be but a skeleton to be rattled as judges shake the handles of all doors trying to find exceptions to what they may consider a harsh rule.

Whether plaintiff's authority, the McFadden case, is "corruption by interpretation" or will lead to further relaxing of the law, which Chief Justice Weygandt said in **Skinner v. Pennsylvania Railroad, 127 Oh St 69, 186 N. E. 722,** "is plain and unambiguous," only time and future pronouncements of the Supreme Court will disclose.

In dismissing the McFadden case,[1] it is pointed out that for authority Judge Middleton went to the case of Colonial Trust Co., Admr., v. Elmer C. Breuer, Inc., 363 Pa. 101, 69 A. (2d) 126, the object struck being a steel coil only slightly smaller than the coil dropped by the Ohio defendant, Elmer C. Breuer Transportation Co. The Pennsylvannia court made great play upon the meaning of "discernible," that it implies something more than visible. Shades of Voltaire! Why should a driver permit his vehicle to run into some unknown visible object?

It is likely our court arrived at its conclusion because it was felt it would be an anomaly in the law for the Elmer C. Breuer transportation companies to receive at the hands of Pennsylvania's high tribunal an adverse decision, then later a favorable nod from the high court of its sister state, Ohio, under almost identical facts.

And reviewing Judge Middleton's other authority, Blowers v. Waterloo, Cedar Falls & Northern Ry. Co., 233 Iowa 258, 8 N. W. 2d 751, the high court holding that it was a jury question whether a snow sweeper, 35 feet long, 10 feet wide and 10 feet high, was a discernible object, this court would give the young negligence lawyer Horace Greeley's excellent

---

1. Like the Hangen case, the McFadden facts disclose no assured clear distance was ever established! The agreement under which the case was submitted without a jury smacks of arbitration. The photograph of the object was improper evidence because taken at night. It is likely flash was used, but even if made by time exposure with the sole illumination of automobile headlights there is not existing film that even remotely approaches the image-forming capacity of the human eye behind the sweeping beam of 200 feet headlights. It is significant Judge Middleton confines his opinion to "the evidence in the case now before us."

advice, "Go West, young man, go West," Iowa has green pastures as well as tall corn. And, as added inducement, Iowa's assemblymen have appended to its assured clear distance statute, "such driver having the right to assume, however, that all persons using said highway will observe the law."[2] Plaintiff's excuse was that it was dark snowing and the sweeper covered with snow. Does this mean that darkness and snow nullify the statute? If so, then, during the winter, operation of the statute will be suspended a majority of the time in Northern Ohio when the hours of darkness greatly exceed those of daylight and snow grips the lake region.

It would seem impossible to reconcile the Blowers case with **Kormos v. Cleveland Retail Credit Men's Co., 131 Oh St 471, 3 N. E. 2d 427, 6 O. O. 150**, wherein the court said:

"The automobile in the instant case was a substantial object and, whether mudspattered or otherwise, whether driven or parked, was an object which should have been discernible by the plaintiff below."

And it appears that under existing law transportation counsel must advise trucking clients: "In the event of breakdowns leave your vehicle in the travel lane. The Kormos and Smiley cases preclude possibility of a sympathetic jury's verdict that would mean financial disaster, A traffic fine would not be a calamity. But if you move over to the curb or off on the berm then you run the risk of a well-coached plaintiff testifying so as to bring himself within the exception of **Matz v. Curtis Cartage Co., 132 Oh St 271, 7 N. E. 2d 220, 8 O. O. 41**."

Matz testified he was forced to drive into the unlighted truck parked at curbside by an approaching car suddenly crossing the centerline. Illustrative of the well-coached witness and an eagerness to seize upon the exception, see **Rogers v. Anchor Motor Freight, 95 Oh Ap 62, 117 N. E. 2d 541, 52 O. O. 412**, another case where plaintiff averred he was compelled to turn out by an approaching car. Plaintiff on cross-examination was asked whether he assumed a clear path ahead of him. Evidently mindful of Judge Hart's averment in the Smiley case that "By force of statute the motorist may therefore assume nothing that is not assured to him by the range of his vision." Rogers replied, "I wasn't making any assumptions at that time. I knew nothing about anything that lay beyond me."

At first blush an excellent parry, but then the significance dawns upon you. Plaintiff, who testified he was slowing down with his "foot on the brake all the time," and could not see past an auto that had entered the roadway 300 feet ahead permitted his car to pass into the unknown. He ran into the rear of an unlighted truck parked on the edge of the highway and extending about five feet into his lane of travel. As Judge Ross points out in a strong dissent, "The undisputed facts . . . disclosed by his own testimony . . . were that plaintiff continued at a speed that made it impossible for him to stop at the point where he ceased to have an assured clear distance ahead . . ."

---

2. An "Andy Brown" statute? "The big print gives it to us, then the fine print takes it away."

The ultimate in attempts to qualify an exception to the rule, occurred in **Marchal, Admr. v. Frankham, 41 Abs 336, 58 N. E. 2d 679,** noted at 30 A. L. R. 2d 1077. After dark Frankman caromed off the rear of a road roller into a vehicle being towed in the opposite direction. Attempting to seize upon the only legitimate exception, sudden entrance of the object within the assured clear distance, Frankman argued that the "road roller suddenly entered his lane of traffic." This proved a little too thin, however, and the court of appeals reversed a verdict for defendant and ordered a new trial.

Plaintiff's supplemental brief herein poses the "sudden entrance" argument. But the facts as plaintiff himself related them preclude the exception!

". . . drove up over the hill in that road. Soon as I broke over the peak of it there I seen this truck setting in the road. I did not see the truck prior to that time.

". . . the truck was cross the road.

". . . come over the rise and there he was is all I can tell you."

Plaintiff views the matter as though the facts commenced with plaintiff at the crest of the hill confronted with an emergency, defendant's highway truck blocking the road 176 feet away, that defendant must bear the consequences for what followed when plaintiff slammed on his brakes and drove into the bank on the right.

But, as an astute Teuton would put it, "Herr Smith war vom Himmel plotzlich nicht gefallen. Aber nein!" The facts are that plaintiff was driving down a winding river road in a drizzly rain with an assured clear distance that was constantly diminishing as he approached the crest of a hill. The grade North and South from the crest was formidable, reducing his assured clear distance almost to the vanishing point, because, as plaintiff testified, he did not see a 2½ ton yellow highway truck "setting in the road" 176 feet away until he "broke over the peak."

Obviously plaintiff did not know what was in the roadway beyond the peak, yet testified he drove beyond the limit of his vision, the hill crest, at a speed that could have been up to 50 MPH., in a drizzly rain. Perhaps the key is in his admission in his answer to the 30th question in his deposition. "There wasn't no time to stop after I seen the truck."

The motion for a new trial is denied, an entry may be framed. Exceptions are saved to the plaintiff.