RONALD RABENOLD, Appellee, v. RAY HUTT, Appellant.

No. 44567.

FEBRUARY 14, 1939.

REHEARING DENIED JUNE 23, 1939.

Baldrige & Bailey, ·for appellee.

S. W. Livingston, for appellant.

SAGER, J.—Since the jury found for plaintiff, we will, for the purposes of this opinion, consider the facts hereinafter referred to as having been established, though there are, of course, numerous points of contradiction.

The accident which affords the basis of this suit happened November 1, 1936, on a primary highway between Washington and Ainsworth in this state. Plaintiff was riding in the front seat of a Ford car, then being driven by one Koehler, with Simmering on plaintiff's right. The Ford was in good condition and Koehler, an experienced driver. The night was foggy, becoming increasingly so from about ten o'clock on until the accident happened. The plaintiff, at the time, was twenty years old, and his companions, eighteen and nineteen, respectively. They had attended a show at Washington, after which they "picked up" three girls and proceeded to Keota to a dance. Arriving there and finding the dance over, they started on the return journey. At that time "it was pretty foggy. It gradually grew worse all the time as we approached Washington."

Having left the young women at their homes, plaintiff and his companions proceeded out of Washington eastward on this primary highway, a distance of about a mile and a half to the place the accident happened. The highway at that place was straight and no other cars were in the vicinity at the moment. According to plaintiff and his witnesses, they passed two cars on their way out. These had lights burning and were visible to a distance of at least two hundred feet. The Ford in which plaintiff was riding was being driven at a speed of fifteen miles per hour. The lights on the Ford were on, and the pavement could be seen ahead of the car perhaps twenty-five feet. The black line in the center of the pavement was also visible.

When the Ford reached the place of the accident, according to plaintiff, "we seen a black object and then it was an instant till we hit." The Ford was on its own or south side of the pavement when the collision occurred. The defendant's car was the "black object" and it was south of the black line when first noticed. Plaintiff was looking ahead and testified that defendant was driving without lights. Plaintiff is supported by his companions in substance and in every material aspect. Simmering added a few details. He was sitting on the right side. He said the fog was heavier in some places than others, and estimated the speed of the Koehler car at fifteen miles per hour, and that of defendant at thirty-five when they came together. Koehler said that when they started to Keota visibility was good but by the time they started from there, it was getting more dense, and at the time they started back from Washington it

was quite bad. He said further that he could see twenty-five to thirty-five feet ahead when they hit fog banks, and at other times quite a bit farther.

The occupants of the Ford were uncertain of the position of the cars after they stopped. Appellant argues that they were north of the black line, locked together by the impact so that they could be separated only by the use of great force. It is further argued by the defendant that the position of the cars indicated an almost perfect head-on collision; and that, being found parallel with the pavement and north of the black line, the collision must have occurred on defendant's side of the highway. This overlooks some features of the evidence, as for instance, broken glass on the south half of the road. But for the purpose of this opinion, we take defendant's view of the record so far as it relates to the position in which the cars stood after the accident was over.

As it affords the basis of one of appellant's complaints, this further bit of testimony of the plaintiff should be noted:

"I didn't attempt to drive the car. I didn't make any suggestions at all to Mr. Koehler about driving the car. I at no time interfered with the driving or suggested anything about it, either before we left Washington or after. I didn't make any suggestion that we had better not make the trip to Ainsworth. I didn't suggest that we had better stop at any time during the evening."

Appellant bases his demand for a reversal of the cause on propositions which may be stated as follows:

First, the physical facts (the position of the cars) established that plaintiff's evidence must be disbelieved and therefore raised no issue.

Second, plaintiff was guilty of contributory negligence in riding in Koehler's car under the conditions, and without protest or warning or suggestions of any kind. Appellant also argues in effect that plaintiff assumed the risk of all that might befall, as well as that he was negligent.

The third and fourth assignments do not call for specific attention because the disposal we make of one and two makes this unnecessary. The third is a combination of the first and second, and the fourth is a complaint against instructions. This last is not discussed for the reason (as stated by defendant)

that the arguments and citations on the other points "cover the same legal questions urged" to the first and second.

The record before us leaves no doubt but that this was properly a case for the jury unless appellant's contentions as to the physical facts and of plaintiff's alleged negligence and assumption of risk demand that we hold as a matter of law that plaintiff has not made a case. We are not able to so hold.

Appellant cites cases from foreign jurisdictions which lend support to his contention that the position of the cars after they came to rest, established as a physical fact that appellee's contention that the collision occurred on the south or plaintiff's side of the road could not be true. But the decisions he cites from our own reports do not go that far. An examination of these citations of our own cases will show that there is no necessity of distinguishing them. These cases are: Hutchinson v. Sioux City Service Company, 210 Iowa 9, 230 N. W. 387; Deweese v. Iowa Transit Lines, 218 Iowa 1327, 256 N. W. 428; Hewitt v. Ogle, 219 Iowa 46, 256 N. W. 755; Reid v. Brooke, 221 Iowa 808, 266 N. W. 477; McDaniel v. Stitsworth, 224 Iowa 289, 275 N. W. 572.

To sustain appellant's contention in this regard would require the assumption by us of a knowledge of physical forces under conditions only imperfectly known, which we do not claim to possess. The difference in the weight of cars, and of their speed; the precise angle of approach, the condition of the pavement, and the possible effect of conscious or unconscious movements of the drivers of the cars to avoid collision in the brief interval permitted for such movements, are factors which might have entered into the forces which determined the position of the cars when they came to rest. If it be said that these are all of a speculative character, the answer is that they would be and are as much so in our consideration of them, as they would be on the part of the jury. No precise answers to the problems of fact are suggested, and none definite, could or ever will be. But the decision of fact questions in law actions is primarily for the jury, and this is a case of that character. We may not substitute our judgment for theirs. On the question generally, see: Castille v. Richard, 157 La. 274, 102 So. 398, 37 A. L. R. 586, and Note, 587; Note to 73 A. L. R. at 1020; Citations in current Blue Book Supplement.

As a further ground for reversal, appellant insists that

plaintiff was negligent in getting into and riding in Koehler's car under the condition disclosed here, and by reason of that fact and of his failure to advise, direct or complain of the method of driving, he assumed all risk incident to the journey. With this proposition we cannot agree. With reference to the suggested negligence in undertaking the trip at all, the inquiry naturally suggests itself as to when the negligence began, and when this discovery was made what was the plaintiff required to do to avoid the charge of negligence?

It was not foggy when plaintiff and his associates ventured on the events of that night. There could have been no negligence in the beginning of the trip, and if along the journey the fog arose and became denser as time went on, whose duty was it to decide when it was so thick that the driver should stop the car? If the car was stopped in a fog so dense as to require Koehler to stop where he was at any given point, plaintiff would then be subjected to the hazards of cars coming from the rear operated by drivers who did not agree that the fog was too dense to permit safe driving. A rule of law such as appellant contends for would require the operator of a car to decide in advance whether or not it was going to be foggy; or, if his conclusion in that regard proved faulty, to stop his car and await developments. We do not wish to commit ourselves to such a doctrine. We prefer the rule announced in Peasley v. White, 129 Me. 450, 152 A. 530, 531, 73 A. L. R. 1017:

"The driver of an automobile, encountering a fog, is not bound as a matter of law to stop and wait for the fog to lift in order to escape the charge of negligence. It is common knowledge that the fogs from the sea and of the inland are usually penetrable to the eye, and, while visibility may be low, if the driver proceeds with due care, progress may be made through them with reasonable safety. The degree of care to be exercised must vary with conditions of fog, of roadway, and of traffic. The type, size, and power of the car may be of greater or less importance. It is impossible to enumerate all factors involved, but it has been well said that the duty of the driver of a car in a fog, is: 'He must, however, exercise a degree of care consistent with the existing conditions.' Cole v. Wilson, 127 Me. 316, 143 A. 178, 179."

Or to put it in the language of the Washington court, this is the better rule:

"One of the respondents testified to the effect that the fog lay in banks or strips—in places not so dense as to interfere with a reasonable view ahead, but proceeding they came into places where the fog was so dense that the white light of the headlights was mirrored back to the driver, and he could see nothing in advance of his automobile. Under such conditions shall a driver stop in a fog bank until the fog clears? If one does so all must do so, or the danger would be thereby increased, and if all stop how shall anyone reach his destination? It seems to us in reason that traffic must be permitted to move on the highway at all times, but that in driving through a fog bank each driver must do so in a careful and prudent manner, with due regard for the safety of others; and what is careful and prudent under the particular conditions shown will usually be a question for the jury." Devoto v. United Auto Transp. Company, 128 Wash. 604, 223 P. 1050, 1051; Id., 130 Wash. 707, 226 P. 1118.

But appellant says that plaintiff assumed the risk incident to the trip under the conditions the record discloses. We are at loss to find what that risk was. It wasn't a drunken driver, because there is no suggestion that Koehler had been drinking. It wasn't inexperience, because Koehler was admittedly not that. On the contrary, the record discloses that he was for a considerable time driver of a school bus. It wasn't a defect in the car, because it had been a short time previously put in what Koehler described as "A-1" condition. If plaintiff was not bound to keep off the road entirely, and he was not, there was only one risk left which needs consideration here and that was that the defendant or some other driver would meet the plaintiff and his companions in violation of the laws of the road.

We believe it takes no citation of authority to sustain the proposition that the driver of a car does not assume that risk. Neither do we think that plaintiff should be denied recovery because he failed to advise, protest or otherwise bestir himself with reference to the way the car was being driven. We find nothing suggested by the record that he should or could have done. He was riding in a car with lights on, on the proper

327

side of the road, and at a speed of fifteen miles per hour. This car was in perfect condition and was being driven by an experienced operator. He was watching the road, as was the driver, and as we see it, the only thing that he might have said was that the car be stopped to await results. This, we have already said, was not required.

It follows that this case was properly left to the jury. The authorities cited by the parties have been examined and their various contentions considered, and we find no grounds for a reversal.

In this state of the record, we hold that the case should be, and it is, affirmed.—Affirmed.

MITCHELL, C. J., and HAMILTON, OLIVER, HALE, MILLER, BLISS, and RICHARDS, JJ., concur.