WARD V. PREWITT, Appellant, v. MYRL RUTHERFORD et al., Appellees; MATTHEW LEO McKEONE, SR., defendant to cross-petition, Appellant; MATTHEW LEO McKEONE, JR., et al., defendants to cross-petition, Appellees.

No. 47101.

DECEMBER 16, 1947.

Joe B. Tye, of Marshalltown, and Miller, Huebner & Miller, of Des Moines, for plaintiff-appellant, defendant to cross-petition, appellant, and defendants to cross-petition, appellees.

Boardman, Cartwright & Druker, of Marshalltown, and Paul W. Steward, of Des Moines, for defendants-appellees.

MULRONEY, J.—This is a truck-collision case and, since the trial court directed the verdict for defendants at the close of plaintiff's case, we will view the evidence in the light most favorable to plaintiff.

The accident occurred about 1:30 a. m., on April 19, 1944, on Highway 64, approximately eight miles southwest of Marshalltown, Iowa. The paved highway at this point runs diagonally northeast and southwest, but for convenience we will speak of it as a north-south highway. The weather was clear and the pavement was dry. The truck and trailer owned by defendant Laughary and operated by defendant Rutherford was stopped on the right-hand side of the pavement headed south. One J. E. Van Hook, operating a straight truck, approached the Laughary truck from the south. He first observed the Laughary truck when he was two to four hundred feet away, when he saw the lights on the Laughary truck flash on for a moment and then go out. Van Hook arrived opposite the Laughary parked truck and stopped on the pavement. He left his motor running and his lights burning and stepped out of his truck and went over to the Laughary truck. There were no flares or fusees on the highway. The driver of the Laughary truck told him he was having trouble with his lights and asked Van Hook if he had a flashlight. Van Hook said he had but that it "wasn't any good" and he suggested the trouble might be in the dimmer switch. The two truck drivers worked on the switch for a time and then Van Hook noticed the lights of another truck appear over a knoll about a quarter of a mile to a half a mile to the north, or to the rear of the Laughary truck. This was plaintiff's truck and trailer approaching and when Van Hook looked up and saw the clearance lights of the approaching truck, he said: "My God, here comes another truck."

He got back into his truck and drove north, flashing his lights at the oncoming truck. Plaintiff's truck and trailer passed him when he was about seventy-five to one hundred feet past the rear of the parked unlighted Laughary truck. Van Hook heard a man scream in the plaintiff's truck, and then the crash as plaintiff's truck crashed into the rear of the parked unlighted Laughary truck, and then he saw in his rear-view mirror the flames leap into the air as plaintiff's truck took fire. He found a driveway and drove in and then ran back to the scene of the collision. Rutherford and another occupant of the Laughary truck were unhurt but the cab of plaintiff's truck was smashed and the gas tank under the seat was broken and the gasoline was burning. Plaintiff was pinned in the cab and the three men worked to get him out. They finally succeeded in extricating him from the cab but they were unable to rescue a Mrs. Higgins, who was also in the cab, and she perished in the flames.

When a passing motorist came along and stopped he was asked to take plaintiff to the hospital in Marshalltown and the three men carried plaintiff to the car and Rutherford went along to the hospital. The night supervisor at the hospital in Marshalltown told of the arrival of Rutherford and plaintiff at the hospital, and of their taking plaintiff from the back seat of the car onto a cart and then to a hospital room, where she made a quick check of his injuries prior to calling the doctor. She testified that Rutherford said several times to get a doctor immediately, that it was all his fault, and that his company was taking care of all expenses. When she called Dr. Grossman, Rutherford repeated his statement, while she was at the telephone, that the accident was his fault and his company would take care of the bills.

Dr. Grossman testified that when he arrived plaintiff was only slightly conscious; that his face was so badly cut on the left side that you could not recognize it as a human face; that the left eyebrow was turned down in a flap about two and one-half inches long, so far over the eye that you could see into the orbit back of the eye; that his left ear was split clear to the cartilage and the left cheek was laid open so that you could almost see the entire cheekbone; that the end of his

nose was almost cut off and there were deep cuts on his neck and chin and the lower lip was split clear through so that when his mouth was closed you could still see his teeth; that there were dozens of other small cuts on the face, nearly all of which contained pieces of glass. Besides the head injuries plaintiff's arm, wrist, and hand were burned, with fingers and thumb charred. His left leg was burned and the right tibia was broken at the joint into dozens of pieces and the fibula of the same leg was broken in two places.

The doctor said he first worked on plaintiff's face for about four hours; that plaintiff had no anesthetic, as "he was not conscious and didn't even know that I was sewing." More will be said with regard to the doctor's testimony later. There was other testimony of the sheriff and others who arrived at the scene of the accident after the collision. One witness testified to "burning tire marks" of plaintiff's tractor and trailer, that were still visible on the pavement, extending back about forty feet from the oil puddle which he fixed as the point of collision. This witness was a truck driver who arrived shortly after the accident while plaintiff's truck was still burning and he testified there were no fusees or flares when he arrived and he put out fusees at first and then he set out lighted flares. He said it takes but a "split second" or just "a few seconds at the most" to "grab a fusee, rip the tape off and strike it.".

Defendants' motion for directed verdict alleged as grounds that the evidence was insufficient to establish defendants' negligence, proximate cause, or freedom from contributory negligence, and affirmatively established that plaintiff was guilty of contributory negligence as a matter of law. The trial court, evidently overlooking Rule 118, Rules of Civil Procedure, sustained the motion generally. Plaintiff appeals.

I. Defendants in their answer admitted Laughary was the owner of the truck and Rutherford was Laughary's employee and operating the truck at the time of the accident with the owner's knowledge and consent. The evidence showed that Rutherford stopped the truck on the main traveled portion of the highway at night, without lights of any kind, and without placing flares or fusees of any kind to warn approaching traffic;

and that he was so parked for five to ten minutes before the collision. This was a sufficient showing of negligence. Section 321.448, Code, 1946, provides for the placing of fusees "immediately" when a truck is stopped on the traveled portion of a highway at night and the placing of lighted flares on the roadway "as soon thereafter as possible, and in any case within the burning period of the fusee." See Hayungs v. Falk, 238 Iowa 285, 27 N. W. 2d 15; Johnson v. Overland Transp. Co., 227 Iowa 487, 288 N. W. 601. The question of defendants' negligence was for the jury.

II. The question of whether or not defendants' negligence was the proximate cause of the injury was for the jury. In Schwind v. Gibson, 220 Iowa 377, 385, 260 N. W. 853, 857, we stated:

"It will not do to say *as a matter of law* that his negligence in permitting his truck to stand upon the pavement without lights was not a proximate cause of the collision in question. That question, under the facts in this case, is necessarily for the jury. Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 243 N. W. 561; Bell v. Brown, 214 Iowa 370, 239 N. W. 785; Buchanan v. Hurd Creamery Co., 215 Iowa 415, 246 N. W. 41."

III. Plaintiff's argument with respect to the grounds in the motion pertaining to contributory negligence is that the no-eyewitness rule is applicable in this case. The argument is based on the testimony of plaintiff and of Dr. Grossman. Plaintiff testified as to his leaving Chicago with the loaded truck. He remembered reaching the junction of Highways 30 and 64 near Marshalltown (about two miles from the point of collision) and of turning off Highway 30 and onto Highway 64. He spoke to Mrs. Higgins at this place and told her to use a package, with some new overalls in it, for a pillow. He said she settled back in the corner of the cab. He then said:

"Between the time I left the junction and the time of the accident, I do not recollect anything happening that was out of the ordinary. The next thing I remember was coming to in

the hospital. That is the last that I remember from the time I turned the corner.''

Dr. Grossman testified:

''When Mr. Prewitt came to the hospital he was in an unconscious condition and all the time I worked on him, four hours, he continued to be unconscious. This was caused by the shock or severe injury and the loss of blood. There is a definite relation between memory and shock when a man goes into unconsciousness. When he goes unconscious his memory is stopped and it has a very marked effect on the memory of events that happened prior to the time he went unconscious. A great majority of patients who are in a severe accident or go unconscious cannot remember to a varying degree what has happened for a certain time before. This is called retrograde amnesia, being a backwards loss of memory. This retrograde amnesia varies with individuals, but in nearly every accident which causes unconsciousness the patient has retrograde amnesia to a certain extent. Some for only a few minutes prior to the accident and some for hours prior to the accident. This retrograde amnesia is a very important thing in pretty nearly every accident where a man goes unconscious. Mr. Prewitt could very easily have that condition and it would be the expected and ordinary thing.''

Plaintiff's argument, based upon the foregoing testimony, is that the same presumption, that one accidentally killed was not guilty of contributory negligence, prevails in the case where one survives the accident but, because of loss of memory caused by the accident, he is incapable of testifying as to the accident. The question is one of first impression in this state, but it is the general rule in the United States that the same presumption does apply in such a case.

The no-eyewitness rule, or the inference of due care applicable in a case in which the plaintiff is deprived of the testimony of the injured person who meets death in the accident, has long been the rule in this state. See Davidson v. Vast, 233 Iowa 534, 10 N. W. 2d 12; Hayes v. Stunkard, 233 Iowa 582, 10 N. W. 2d 19. There is no reason why the presumption as to due care in the case of a dead person should not exist where the

person survives but he is unable to testify as to the facts because of amnesia resulting from the accident. In the annotation, 141 A. L. R. 872, at 873, it is stated:

"The rule is well established that where the loss of memory or other incapacity rendering the survivor of an accident incapable of testifying as to the accident, is shown to be attributable to such accident, it will be presumed, in the absence of evidence to the contrary, that he exercised due care."

The foregoing rule is followed in Breker v. Rosema, 301 Mich. 685, 4 N. W. 2d 57, 141 A. L. R. 867; Hoppe v. Bradshaw, 42 Cal. App. 2d 334, 108 P. 2d 947; Scott v. Sheedy, 39 Cal. App. 2d 96, 102 P. 2d 575; Stotler v. Chicago & A. Ry. Co., 200 Mo. 107, 98 S. W. 509; Torantolla v. Kansas City Rys. Co., Mo. App., 226 S. W. 617; Heaps v. Southern Penn. Trac. Co., 276 Pa. 551, 120 A. 548; Ft. Worth & Denver C. Ry. Co. v. Longino, 54 Tex. Civ. App. 87, 118 S. W. 198; J. M. Guffey Petroleum Co. v. Dinwiddie, Tex. Civ. App., 168 S. W. 439.

We hold that where a motorist receives injuries in an accident, which result in amnesia as to the events leading up to the accident, and eyewitnesses did not see the motorist's conduct prior to the accident, the motorist is entitled to the benefit of the presumption that he exercised due care for his own safety, the same as if he had been killed in the accident.

IV. But defendants argue that, even if the above rule is to be applied in this case, the evidence does not show plaintiff's memory was destroyed as a result of the accident. We feel that under the record in this case the question was for the jury. The plaintiff said he could not remember. The doctor testified as to the severe injuries about his head and the resulting shock and that he sewed up his face wounds and worked on the unconscious man for four hours without giving him any anesthetic and that retrograde amnesia in Mr. Prewitt's case would be "expected" and the "ordinary thing." This evidence would support a finding by the jury that plaintiff was suffering from retrograde amnesia, and that the condition was caused by the accident.

V. The witness Van Hook was not such a witness as would deprive plaintiff of the benefit of the no-eyewitness rule.

He testified that at the time he passed plaintiff he was seventy-five to one hundred feet past the rear of the Laughary truck, traveling in the opposite direction. He was in no position to see and did not see plaintiff's actions during the "material moments" just before the collision. Graby v. Danner, 236 Iowa 700, 18 N. W. 2d 595.

VI. Defendants argue that the evidence shows plaintiff was guilty of contributory negligence as a matter of law because he violated the assured-clear-distance rule, section 321.285, Code, 1946, providing that no person shall· drive a vehicle "at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all· persons using said highway will observe the law."

We have held contrary to defendants' contention in Central States Elec. Co. v. McVay, 232 Iowa 469, 473, 5 N. W. 2d 817, 820. In the McVay case Justice Garfield, in delivering the opinion of the court, gave consideration to the amendment of 1935, chapter 49, Acts of the Forty-sixth General Assembly, providing such driver had a right to assume that all persons using the highway would observe the law and, in a case much like this case, stated:

"* * * that where a motorist, while in the exercise of ordinary care, unexpectedly comes upon a vehicle of which he is not aware and which is not lighted as required by law, and thereafter exercises such care in an attempt to avoid striking the vehicle, he is not to be held guilty of negligence as a matter of law in colliding with the obstruction."

We have recently reaffirmed the above rule of the McVay case. See Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 29 N. W. 2d 204. Without further review of the testimony, and again adhering to the rule of the McVay case, we hold the record does not show that plaintiff was guilty of contributory negligence as a matter of law.

It is our conclusion that the trial court erred in directing the verdict for defendants and for that error the case is reversed.

1330

■ Plaintiff argues one further error. The trial court sustained the objection to Dr. Grossman's testimony to the effect that when the nurse called him the night plaintiff was brought to the hospital he heard the nurse ask "the man" who was responsible for the payment of the doctor's bill and hospital bill and he heard a man reply to her: "This was my fault and my company will take care of the bills. Tell the doctor to come right now." The nurse had testified Rutherford made this statement and that he was standing in the doorway about ten feet from the telephone and the only person in the room when she called the doctor. The evidence was clearly admissible. The identity of Rutherford as having made the statement to the nurse was established by her testimony without objection. The doctor was competent to tell what he overheard. State v. Rowley, 198 Iowa 613, 199 N. W. 369; Shawyer v. Chamberlain, 113 Iowa 742, 84 N. W. 661, 86 Am. St. Rep. 411.

The cause is reversed.—Reversed.

OLIVER, C. J., and BLISS, HALE, GARFIELD, SMITH, and HAYS, JJ., concur.