WILLARD ELLIS, appellee, v. J. M. ROBB, d. b. a. ROBB LIVESTOCK COMPANY, appellant.

No. 47785.

(Reported in 47 N.W. 2d 246)

.APRIL 4, 1951.

REHEARING DENIED JUNE 8, 1951.

Cory & Sackett, of Spencer, K. B. Welty, of Spirit Lake, and Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellant.

Peter B. Narey, of Spirit Lake, Diamond & Jory, of Sheldon, and James & Greer, of Spencer, for appellee.

WENNERSTRUM, C. J.—Plaintiff's action for damages has resulted by reason of an accident which occurred in a fog and at which time plaintiff's automobile collided with the rear of defendant's truck. It had been stopped on the right-hand side of a paved highway for the purpose of inspecting and fixing the motor and lighting equipment. Defendant denied that he was in any way negligent and alleged that the plaintiff was guilty of contributory negligence. At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendant moved for a directed verdict. These motions were overruled. Upon submission of the cause to the jury a verdict was returned in favor of the plaintiff. The defendant has appealed.

The accident occurred during the late evening of March 17, 1948, on a two-lane paved highway 18 feet wide with gravel shoulders which it is claimed were about 8 feet in width. The scene of the accident was approximately one-half mile north of Milford. The appellee had driven his Buick car from Storm Lake, having left that point at approximately 10:40 p.m. The route over which he had traveled was intermittently foggy. It is shown that the fog was somewhat more dense and occurred more often to the north of Milford than south of this community. The testimony of the witnesses shows that as appellee and others traveled north toward the point where the collision occurred, the fog was not of a steady nature, that there would be patches of fog and then a clearance of it and that the heavy conditions of fog occurred some distances apart. The fog, at times, seemed to be drifting and at the point of the collision it was quite heavy. The driver of the vehicle owned by the appellant was operating a combination tractor-trailer. It had a weight of approximately 35,000 pounds when loaded and an over-all length of 43 feet. When this vehicle, which was proceeding north, was south of the town of Milford, it had mechanical trouble and mechanics were obtained to make repairs. At this point the truck was driven off the pavement and difficulties developed in getting it back onto the paved highway because of the soft shoulder. When the repairs had been completed the tractor-trailer proceeded north through the town of Milford to a point approximately one-half mile north of the town. Further mechanical trouble developed here and the tractor-trailer was stopped on the right-hand side of the paved highway.

878

The automobile in which the mechanics were riding had been following the truck. Upon the stopping of the truck, this car was driven north and ahead of it some 15 feet. Lynn Foderberg, who was one of the mechanics in the car, got out and, hearing a car approaching from the south, ran to the south waving a flashlight in an effort to stop the approaching car. When he had reached a point about 50 to 60 feet south of the trailer, the oncoming car passed him. He observed that the brakes were on and estimated that the car, at that point, was traveling at a speed of approximately 50 miles per hour. A collision of this automobile, which was owned and driven by the appellee, with the rear end of the trailer occurred almost immediately. There is evidence of skid marks made by the Buick car 87 feet and 5 inches in length. The brakes on the truck had been set, but it was shoved forward about 15 feet and jammed into the mechanic's car. James Stevens, a mechanic who had accompanied Lynn Foderberg, was, at the time of the collision, in the act of raising the hood of the tractor. He was thrown approximately 23 feet from the point where he had been standing or working. No warning lights in the nature of flares or other signals had been placed on the shoulder or on the pavement. There is conflicting evidence whether or not there were any lights burning on the appellant's truck. There is evidence from which the jury could have found that the lights on the truck, if any, were not of the kind required by statute, section 321.392(5), 1946 Code. The appellee, testifying in his own behalf, stated that as he proceeded north from Milford he was traveling at a rate of speed between 40 and 45 miles per hour and that the fog began to be heavy; that when he reached a point about 125 feet from where his car collided with the truck, he observed a small light on the pavement ahead of him; and that he put on his brakes and continued to observe the light until he passed it and then saw the truck on the pavement immediately ahead of his car. The collision then occurred, with the automobile going into and under the truck.

There are only two issues raised by this appeal. They are: (1) Was the trial court in error in submitting to the jury the appellant's contention that the appellee was guilty of contributory negligence, and (2) did the court commit an error in giving Instruction No. 17.

I. Inasmuch as it is the appellant's claim that the appellee was guilty of contributory negligence as a matter of law and that the motions for a directed verdict should have been sustained, it is first advisable to give consideration to the statute particularly involved. Section 321.285, 1946 Code, is, in part, as follows:

"Speed restrictions. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

The quoted section has received the consideration of the legislature as well as of this court. The phrase "* * * such driver having the right to assume, however, that all persons using said highway will observe the law" was added to the prior portion of the statute by the Forty-sixth General Assembly (1935) (46 G.A., chapter 49, section 1) and first appeared in the Code of 1935 as a part of section 5029. Many of our cases frequently quoted and pertaining to this statute relate to factual situations that occurred prior to its change. Although this statute has general application in the instant case, it is well to consider the fact that there was evidence which was not controverted or, at least, was sufficiently presented so that the jury could have found that the appellant was not complying with the applicable law.

 It is definitely shown that the appellant's truck was stopped on the right-hand side of a paved highway. Section 321.354, 1946 Code, is as follows:

"Stopping on traveled way. Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other ve-

hicles and a clear view of such stopped vehicle be available from a distance of two hundred feet in each direction upon such highway."

Section 321.355, 1946 Code, is also here applicable and is as follows:

"Disabled vehicle. Section 321.354 shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

In the case at bar the appellee had the right to assume until he knew, or had an opportunity to know otherwise, that there would not be a truck illegally parked on the highway. It was for the jury to decide whether the truck was illegally parked on paving. Smith v. Pust, 232 Iowa 1194, 1197, 6 N.W.2d 315; Uhlenhopp v. Steege, 233 Iowa 368, 373, 7 N.W.2d 195. See also Prewitt v. Rutherford, 238 Iowa 1321, 1329, 30 N.W.2d 141; Tuhn v. Clark, 241 Iowa 441, 445, 41 N.W.2d 13, 15, 16.

In determining whether the appellee was, under the circumstances, guilty of contributory negligence as a matter of law, we should keep in mind that this court, in considering questions somewhat similar to those here involved, has held that where a truck was illegally parked and blocking a highway, the question whether it was reasonably discernible in the exercise of ordinary care, whether the speed of an approaching car was reasonable or excessive under the circumstances, and whether from the time the driver of the approaching car discovered the truck he exercised ordinary care in an attempt to avoid a collision, were all questions for the jury. Knaus Truck Lines v. Commercial Freight Lines (1947), 238 Iowa 1356, 1360, 29 N.W.2d 204.

If the appellee was exercising ordinary care as he came upon a truck which was not lighted as required by law, and there is evidence to that effect, and then exercises such care in endeavoring to avoid striking the truck, he is not negligent as a matter of law in colliding with it. The presence of the truck so unlighted and illegally parked furnishes a legal excuse to the motorist. Central States Elec. Co. v. McVay, 232 Iowa 469, 473, 5 N.W.2d 817; Uhlenhopp v. Steege, supra.

It is forcibly claimed by the appellant that because of the extreme heavy fog at or near the place of the accident the appellee was guilty of contributory negligence as a matter of law in traveling at the speed he did and when his visibility was unquestionably limited. Our cases involving situations where fog has contributed to an accident and damages are not many. However, in the case of Caudle v. Zenor, 217 Iowa 77, 81, 82, 251 N.W. 69, 70, we announced a rule which has not been changed, as follows.: "* * * The duty of a driver in a fog, where his visibility is limited, but not destroyed, is well-stated in the case of Salera v. Schroeder, 183 Minn. 478, 237 N.W. 180, 181:

" 'A stop is not required, but "in driving through a fog bank each driver must do so in a careful and prudent manner, with due regard for the safety of others, and what is careful and prudent under the particular conditions shown will usually be a question for the jury." '

"And so in the case at bar, under the facts in this case as shown by the evidence, the question of whether or not the driver of the appellee car proceeded in a careful and prudent manner, with due regard for the safety of others, was a question for the jury * * *."

See also Gregory v. Suhr, 224 Iowa 954, 961, 277 N.W. 721; annotations 73 A.L.R. 1025, also 1027. However, see Newman v. Hotz, 226 Iowa 831, 285 N.W. 289.

In the case of Rabenold v. Hutt, 226 Iowa 321, 325, 283 N.W. 865, a case where fog was involved, we held that where such an atmospheric condition existed, the driver of an automobile is not bound as a matter of law to stop and wait for a change in conditions in order to avoid the charge of negligence. It is his duty, however, to exercise a degree of care consistent with existing conditions and whether he did exercise such care is usually left for the jury to determine.

We have given consideration to the evidence and to the authorities herein set forth, as well as the many authorities cited by the respective parties. It is our conclusion that the trial court properly submitted the question of appellee's contributory negligence to the jury for determination.

■ II. It is appellant's further claim, in seeking reversal, that undue emphasis was given to one portion of Instruction No. 17 which, in part, stated: "You are instructed that the law does not prescribe or fix any maximum limit of speed for automobiles operated upon such highway." It is contended that the statute does prescribe a maximum limit of speed which is reasonable and proper under the circumstances. The conditions present at the time of the collision were adequately commented upon in the instruction of which complaint is made, as well as in other instructions, and there is no justification for the claimed error.

In view of the comments made in the dissenting opinion relative to the speed of other vehicles, it might be well to state there is evidence showing the police from Milford, in going to the scene of the accident, drove their car at the rate of 50 miles per hour. A highway patrolman drove about 60 or 65 miles per hour most of the way from Spencer to the place of the accident.

We find no basis for reversal.—Affirmed.

BLISS, OLIVER, GARFIELD, and MULRONEY, JJ., concur.

HAYS, SMITH, MANTZ, and THOMPSON, JJ., dissent.

HAYS, J. (dissenting)—I am unable to agree with Division I of the majority opinion and respectfully dissent.

The question involved is whether the appellee was guilty of contributory negligence as a matter of law, and in considering the testimony it must be examined in the light most favorable to him and it is presumed that the defendant-appellant was negligent.

In addition to the facts set forth in the majority opinion, the following facts, as shown by the record, are pertinent: At the time that plaintiff passed through Milford, a car in which four women from Estherville were riding stopped for the night due to the heavy fog. Immediately following the collision, the police from Milford in going to the scene thereof were forced to drive at a rate of 25 miles per hour. Another party, starting from Milford for the scene of the collision, turned around and came back because of the fog. Two witnesses for the appellee, who were driving on the highway a short distance behind the appellee's car, testified that 20 to 25 miles per hour was as fast as it was safe to drive on account of the fog.

Appellee, as a witness, stated that at the north edge of the town of Milford was a water hole, which required slow driving; that when he got past that he proceeded at 40 to 50 miles per hour; as he passed a farmhouse about a quarter of a mile north of town the fog began to be heavy; that when he reached a point about 125 feet from where he crashed he saw a small light sort of dancing on the pavement ahead of him; that he eased on his brakes and kept his eye on the light until he passed it and then saw appellant's truck on the pavement directly ahead. He testified further as follows:

"Q. Can you tell the jury as you approached that truck and it became a vision before you as you describe, outlined and all, what was the condition of the fog where the truck-trailer or whatever you call it stood? A. Awfully heavy. Q. How was the fog there as compared with the fog 30, 25 or 30 feet south of the truck southward? A. It was heavier there. Q. Where? A. By the truck. Q. Than to your southward? A. Yes. In fact you could hardly see anything at all until you were right up there."

On cross-examination, he testified as follows: That he was going 40 to 45 miles prior to the collision as he had just started to pick up speed where the collision occurred; that he could not tell when he was going to enter a fog bank until he was right up to it; that he was 150 to 200 feet from the fog when he saw it. He further stated:

"Q. Is that when you first applied your brakes? A. No. * * * I didn't change speed at all that I can recall. Q. How far did you travel from the time you first saw the fog bank until you applied your brakes? A. We had gone into the bank already before I ever put the brakes on. When I seen that light I put the brakes on. Q. The fog was such that you couldn't see this light, as you approached this fog bank? A. No, I couldn't see it. * * * Q. How far did you travel before you applied your brakes as you saw this light waving there? A. I was getting close to it then. Q. How close would you say? A. Oh, I believe that I was probably within 50 feet of the man, or maybe 35. I know I was getting close before I could tell what it was. Q. So when you got within 35 feet of the light then you applied your brakes? A. Yes, I had stepped on the

884

brakes, but I really hadn't stepped down on them. * * * Q. At that time what do you say your rate of speed was? A. At the time I went by the light? Q. Yes. A. I would say 40 miles an hour, anyway, when I passed the light."

There is no question but what, as stated in the majority opinion, appellee was entitled to assume that others using the highways would obey the law, in this instance that appellant would not park an unlighted truck upon the highway at night. It is also the rule that ordinarily the issue of contributory negligence is for the jury, *except* where the facts are clear and undisputed and the cause and effect so apparent to every candid mind that but one conclusion may be fairly drawn therefrom, in which case it is a question for the court. Roushar v. Dixon, 231 Iowa 993, 2 N.W. 2d 660.

The majority opinion cites many of our decisions involving fog, in which we have said that it is not required of the plaintiff that he should stop until the fog lifts, but that he may proceed in a careful and prudent manner, and that whether he was so proceeding at the time is for the jury. Each case must of necessity stand on its own facts and a review thereof shows entirely different factual situations and are of no value as precedents.

I concede that appellee is entitled to the benefits of the statute which allows a driver to assume others using the highways will obey the law, and that *where he is in the exercise of due care* and is suddenly confronted with an object illegally upon the highway a legal excuse for not observing the same is created. Central States Elec. Co. v. McVay, 232 Iowa 469, 5 N.W.2d 817. However, under this (McVay) case, and it is cited and relied upon by the majority as the basis for its opinion, the existence of a legal excuse depends upon whether or not the plaintiff was exercising due care at the time he was confronted with the illegal object, so we are back to where we started. Was appellee exercising due care when he was confronted with the appellant's truck?

Two things must be kept in mind in determining the issue here involved: (1) That the burden is upon the plaintiff to plead and prove that he was free from contributory negligence. (2) The meaning of contributory negligence as adopted by this court. It is such negligence on the part of the plaintiff which *"directly con-*

*tributes to the damage in any degree or in any way."* Rogers v. Lagomarcino-Grupe Co., 215 Iowa 1270, 248 N.W. 1; Yance v. Hoškins, 225 Iowa 1108, 1117, 281 N.W. 489, 118 A.L.R. 1186. It need not contribute proximately to the injury. Jakeway v. Allen, 227 Iowa 1182, 290 N.W. 507.

Under the undisputed testimony in this case, examined in the light of our definition of contributory negligence and that the burden is upon the plaintiff to prove his freedom therefrom, it seems to me that appellee is guilty of contributory negligence as a matter of law. The record shows that he was driving blindly into a heavy fog bank at a speed of at least 40 miles per hour without regard to what might be ahead; that such conduct is so clearly not due care under the circumstances, that no candid minds can differ thereon, and that such negligence certainly contributed directly to the injury in some degree or in some way.

In my judgment it was the duty of the court to direct a verdict for the appellant. I would reverse the judgment of the trial court and remand the case for a judgment dismissing the plaintiff's petition.

SMITH, MANTZ and THOMPSON, JJ., join in this dissent.