CHERYLL I. SISSON, administratrix of estate of Ralph Fletcher Sisson, deceased, appellee, v. J. R. WEATHERMON et ux., appellants.

No. 50171.

(Reported in 108 N.W.2d 585)

April 4, 1961.

Swisher, Cohrt, Swisher & Finch, of Waterloo, for appellants.

Alfred A. Beardmore, of Charles City, for appellee.

PETERSON, J.—Action for damages by plaintiff as administratrix of her deceased husband's estate. He lost his life in an

automobile accident. She claims it was due to defendants' negligence.

This accident happened at Waterloo on January 7, 1958, on Highway 63. This highway enters Waterloo on the south edge of the city and runs in a northwesterly direction into the center of the city. Not very far north of the city limits are two streets known as Ansborough Avenue and Ridgeway Avenue, crossing Highway 63. Between the two avenues is a valley with the concrete on Highway 63 running across a creek in the form of a bridge at the bottom of the valley. Mr. Sisson lost his life on the highway northwest of the bridge.

Mr. Weathermon works for Rath Packing Company. Mrs. Weathermon works for the Waterloo School District. He was the owner of a Plymouth car which he used in driving to and from his work. A Chevrolet car was registered in the name of both defendants, and Mrs. Weathermon used same in driving to and from her work.

On January 7, 1958, Mr. Weathermon arose at five o'clock a.m., and went out to start his Plymouth car. The morning was clear, but very cold; 14 degrees below zero. His car would not start. He then started the Chevrolet and awakened Mrs. Weathermon to come and try to start the Plymouth by pushing it. He drove the Plymouth to guide it and she drove the Chevrolet. They proceeded in their yard about 135 feet out to Highway 63. They then drove on the right-hand side of the highway toward the city for a distance of about 150 feet. The Chevrolet then suddenly stalled and the two cars stood bumper to bumper on the highway.

After making several attempts to start the car without success Mr. Weathermon said he would go and get Mr. Lindemon, a neighbor, to push them.

During this activity of the Weathermons, Mr. Ralph Sisson had arrived at his work at the Johnson Dairy, which is about one-half mile southeast of intersection of Ridgeway and Highway 63. Mr. Sisson had worked for Johnson Dairy since 1942 and was one of their dependable deliverymen. They delivered milk in a truck known as a Divco dairy truck. It was completely enclosed, with doors on each side of the cab for easy entrance and exit. The driver operated the truck from a stand-

ing position at all times. He and a companion workman, Mr. Gene E. Fiala, loaded their trucks at the same time to proceed with their day's work.

Mr. Fiala left first. He drove around the two parked Weathermon cars in the left-hand lane without any difficulty. Mr. Sisson followed him some distance behind, although Mr. Fiala saw his lights come up over the hill and the truck coming down into the valley.

When Mr. Weathermon started back to get his neighbor to push their cars he saw the lights of the truck coming toward him. He thought if he could stop the truck he could get the assistance of the truck driver in pushing them. He therefore stepped out into the highway and waved his arms to halt the truck, but Mr. Sisson did not stop.

As Mr. Sisson approached the rear end of the Chevrolet he apparently did not see it until he was between 15 and 20 feet behind the car. The Chevrolet was a two-tone green in color with the paint faded and very dirty. The cars and the parties were all in complete darkness with the exception of the fact that there was a full moon, but with very little light from it. One of the questions of fact decided by the jury in the case was whether or not Mr. and Mrs. Weathermons' rear lights were on in the Chevrolet. There is evidence both ways. The jury decided in answer to a special interrogatory that the rear lights were not on.

Mr. and Mrs. Weathermon testified they had turned on the lights in their cars before they started out into the highway and never turned them off. The first people to arrive at the scene of the accident after it happened were Mr. and Mrs. Harold Bown. Mrs. Bown testified:

"Q. As you came down the highway did you see any lights on these parked cars? A. Not to my knowledge."

Mr. Bown testified: "When I went past the cars I didn't see any lights on either car. I will swear there weren't any lights on the parked cars."

At between 15 and 20 feet back of the Chevrolet Mr. Sisson turned quickly to the left to avoid hitting the cars. As he turned his car to the left and then straightened it out, his left wheels drove up on the shoulder of the highway. As shown

by the marks of the wheels he drove on the shoulder about 42 feet. After he passed the Plymouth he turned his truck back toward the right-hand lane. In some manner in turning back his truck he lost control of his car and was thrown out violently on the pavement. His truck drove off the highway and some distance over into the field before stopping. In striking the paving Mr. Sisson received severe chest and head injuries from which he died about two o'clock that afternoon.

After Mr. and Mrs. Weathermon saw that Mr. Sisson had fallen out of his truck Mr. Weathermon stayed to watch the two cars and Mrs. Weathermon went back to the house to call the ambulance.

Mr. Sisson was 49 years of age. He had attended college two years. His widow and six children survive him. The oldest son was a graduate of West Point. The next son took his college work at Grinnell and Iowa State Teachers College. The third son took one year college work at Vanderbilt and one and a half year at Iowa State Teachers College. The fourth son was a sophomore at Sioux Falls College when Mr. Sisson died. The older daughter was a senior in high school and the younger daughter was in the seventh grade.

The case was submitted to the jury and a verdict was rendered in favor of plaintiff in the amount of $22,009.85. Defendants have appealed.

Appellants assign the following errors as a basis for reversal: 1. The court erred in overruling defendants' motion to direct a verdict on the ground of contributory negligence of plaintiff's decedent. 2. The court erred in giving instructions 4, 5, 14, 16 and 17. 3. The verdict is excessive, and so excessive as to show passion and prejudice of the jury.

I. The principal contention of appellants is that plaintiff's decedent was guilty of contributory negligence as a matter of law.

In failing to direct a verdict for defendants, the trial court followed our decisions in numerous cases to the effect that the question of contributory negligence is rarely for the court, and ordinarily for the jury. Lawson v. Fordyce, 234 Iowa 632, 641, 12 N.W.2d 301, 306; Leinen v. Boettger, 241 Iowa 910, 926, 44 N.W.2d 73, 82; Strom v. Des Moines and Central Iowa

Ry. Co., 248 Iowa 1052, 82 N.W.2d 781; Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 91 N.W.2d 380. The following statement from Leinen v. Boettger, supra, has been approved many times: "* * * the issue of freedom from contributory negligence * * * is usually one of fact and not of law and is peculiarly and ordinarily for the determination of the jury, and that it is only in the rare and exceptional case and where the lack of reasonable care is so manifest, flagrant [and] palpable that reasonable minds may fairly reach no other conclusion, that the question is one of law for the court. It is ordinary care, and not the highest degree of care, that is required." (Citations)

██ Appellants based their contention as to contributory negligence on two specifications: a. Decedent violated the rule of assured clear distance. b. Decedent failed as a matter of law to maintain a proper lookout.

a. Appellants allege violation of sections 321.384, 321.409 and 321.415. Section 321.384 provides for lights making persons and vehicles discernible at a distance of 500 feet. Section 321.409 provides for specific lighting equipment, and section 321.415 provides for usage of such equipment.

In the instant case we have a truck coming down a hill on a dark morning, with defendants' cars stopped on their lane of travel in the valley between two hills, without lights. In analyzing the question of assured clear distance it is necessary to refer to section 321.285 and an amendment thereto in 1935 by the Forty-sixth General Assembly. Said section pertains to speed and provides: "* * * no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead." In 1935 the following amendment was added: "Such driver having the right to assume, however, that all persons using said highway will observe the law." (Chapter 49, section 1)

Prior to the amendment we consistently held that a driver who failed to maintain such assured clear distance, and crashed into a vehicle, was guilty of contributory negligence as a matter of law. The cases cited by appellants in support of this contention were in this category.

The latest case cited by appellants is Shannahan v. Borden Produce Co., 220 Iowa 702, 263 N.W. 39. It was announced

about three months after the amendment became effective. In quoting the statute the decision omitted the amendment and made no reference to it. It followed the rule of the cases decided under the original statute. Before the amendment the onus was placed wholly on the motorist who crashed into a parked vehicle. For example in the Shannahan case the parked truck had displayed no rear lights. Yet motion to direct was sustained against the motorist. By later decisions, after adoption of the statute, this cold and hard theory has been changed.

The first case after adoption of the amendment, in which the amendment was fully and comprehensively considered, was Central States Electric Co. v. McVay, 232 Iowa 469, 472, 473, 5 N.W.2d 817, 819. This was an action to recover for damages to plaintiff's automobile caused by colliding with the rear of defendant's unlighted farm wagon. The trial court directed verdict for defendant. We reversed and said:

"The legislature evidently had a purpose in amending the statute. It is our duty to give effect to the clause which the lawmakers saw fit to add to the statute, if this can fairly be done. It is a cardinal rule that each part of a statute must be given effect, if possible. This amendment to the statute unmistakably shows the legislative intent that the right to assume compliance with law on the part of others is to be considered in determining whether the statute has been violated. * * *

"As applied to the present controversy, we think the legislature must have intended by this addition to the statute, that where a motorist, while in the exercise of ordinary care, unexpectedly comes upon a vehicle of which he is not aware and which is not lighted as required by law, and thereafter exercises such care in an attempt to avoid striking the vehicle, he is not to be held guilty of negligence as a matter of law in colliding with the obstruction."

The position in the McVay case as to submission of the question of contributory negligence to a jury has been followed and approved in several later cases. Uhlenhopp v. Steege, 233 Iowa 368, 7 N.W.2d 195; Semler v. Oertwig, 234 Iowa 233, 12 N.W.2d 265; Prewitt v. Rutherford, 238 Iowa 1321, 30 N.W.2d 141; Knaus Truck Lines, Inc., v. Commercial Freight

794

Lines, 238 Iowa 1356, 29 N.W.2d 204; Ellis v. Robb, 242 Iowa 875, 47 N.W.2d 246; Plathe v. Junkers, 248 Iowa 326, 79 N.W.2d 324.

Plaintiff, as to her decedent, is entitled to the benefit of this new and enlightened interpretation as to submission to the jury.

b. We hold the facts in the case do not create such a failure by decedent to maintain proper lookout as to justify withdrawal of the question from the jury. The question of lookout was not ignored by the trial court. It was submitted to the jury under proper instruction. (Instruction No. 8)

Slight repetition is necessary to adequately explain the situation as to this objection. The circumstances confronting Mr. Sisson as he drove down the hill to the base of the valley were peculiar and divergent. The exhibits indicate there was not a broad level valley between the hills. The hill he descended came down quite close to the creek and to the roadway crossing the creek. The next hill started to ascend very quickly after crossing the creek. As Mr. Sisson came close to the creek, here stands a man in the highway at about 5:45 on a dark January morning waving his arms.

The record shows Mr. Sisson had $200 cash on his person, belonging to his employer. His first thought must have been that—here is a hitchhiker. He knew nothing of the stalled cars. They were 150 feet away, unlighted. He did not stop. He was not driving over 40 miles an hour. Mr. Fiala, his coworker at the dairy, testified that was the maximum limit of speed of the dairy truck. In less than three seconds, after passing Mr. Weathermon, here loomed a car out of the darkness. He was only 15 to 20 feet away from it. He turned to the left quickly, and avoided hitting it. The suddenness of the turn ran his left wheels up on the shoulder. In another second he drove 42 feet, and passes the cars. In a split second he turns back into the right-side lane, and in doing so the tragedy happens.

Candid and reasonable minds cannot agree that *as a matter of law* this divergence of his attention and all the circumstances outlined make him guilty of contributory negligence. The trial court was right in submitting the question to the jury. The

facts as to cases of this type are so different it is often impossible to find a pattern exactly like the case under consideration. However, general principles as to contributory negligence support the trial court's ruling.

II. Appellants contend the court erred in giving Instruction No. 4 as to joint enterprise. The court instructed: "You are instructed that under the evidence in this case the defendants J. R. Weathermon and Marion Weathermon in jointly attempting to start the Plymouth automobile by pushing the same with the Chevrolet automobile were engaged in a common enterprise or joint venture and that each is liable for the negligence, if any, of the other while engaged in the furtherance of this common purpose."

Appellants' position is that there was no joint venture, but if there was evidence which might so indicate, the court should have submitted the question to the jury and should not have decided it as a question of law.

The Chevrolet was registered in the name of both defendants. Proof of this creates a prima-facie case against both defendants. Sexton v. Lauman, 244 Iowa 570, 57 N.W.2d 200, 37 A. L. R.2d 353. If the actual ownership was in one or the other of the two parties, they could have offered such proof, and in such case it might become a jury question as to ownership. No such evidence appears in the record. The only evidence was that Mrs. Weathermon used it. This alone would not establish absolute ownership in her. On this question there was nothing to submit to the jury.

At the time of the accident Mrs. Weathermon was driving the Chevrolet, Mr. Weathermon the Plymouth. To the extent of Mr. Weathermon's interest in the Chevrolet she was driving with his consent; in fact as to this incident at his specific request.

Section 321.493 provides: "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the car shall be liable for such damage." There was nothing to submit to the jury on this issue.

Under the Sexton case the joint ownership would create a joint liability. In the decision (at page 574 of 244 Iowa) this

court said: "While the word 'owner' is singular in the statute it may extend to the plural 'owners' so as to fasten liability on all of the owners of the automobile if there are two or more such owners of a single automobile."

Irrespective of the above irrefutable situation as to joint liability is the undisputed fact that Mr. and Mrs. Weathermon were jointly engaged in the enterprise of getting their cars started. They both left their cars in the road without lights and without warning signal. Again there was no question to submit to the jury as to joint venture. The instruction of the trial court was correct.

■ III. Appellants contend the trial court erred in giving Instruction No. 5. It was as follows: "You are instructed that operators of motor vehicles upon the highway while required to use reasonable care for their own safety and for the safety of others are not required to anticipate that others using the highway will violate the law or be guilty of negligence until such time as the driver by the exercise of reasonable care knows or should have known otherwise."

Appellants claim this is only an abstract proposition of law, and the court failed to tell the jury how and where to apply it.

It may be only a statement of law, but it is a correct statement. It does not need explanation by the court. It speaks for itself. It should be read and considered with the instructions as a whole. We have often said instructions must be so considered. Odegard v. Gregerson, 234 Iowa 325, 12 N.W.2d 559; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275.

It is not a prejudicial instruction so far as defendants are concerned. We cannot consider it as a basis for reversal.

IV. Appellants' objections to part of Instruction No. 14, and Instruction No. 17 should be considered together. The part of No. 14, as one of plaintiff's allegations of negligence, to which objection is made is the following: "In failing to give any warning to plaintiff's decedent that the defendants' cars were stopped on the traveled portion of the highway."

■ Instruction No. 17 in substance instructed concerning warning that the statutes are not the sole standard of care required of persons using the highways. Persons stalled are

required to give such warning as an ordinarily prudent person would give under the same or similar circumstances.

This is what is known as submitting the matter of common-law negligence. We have recognized this as correct instructions in numerous cases. Delfs v. Dunshee, 143 Iowa 381, 122 N.W. 236; Knaus Truck Lines v. Commercial Freight Lines, supra; Clayton v. McIlrath, 241 Iowa 1162, 44 N.W.2d 741, 27 A. L. R.2d 307.

In Knaus Truck Lines v. Commercial Freight Lines, supra (at page 1365 of 238 Iowa, page 209 of 29 N.W.2d), the court stated: "Even though the statute requiring the * * * flares is not applicable [as in the instant case], it may be the Commercial's driver, in the exercise of ordinary care under the peculiar circumstances shown [also true in the instant case], should have given some other warning sign of the obstruction on the pavement. The question was for the jury."

In Clayton v. McIlrath, supra (at page 1168 of 241 Iowa, page 745 of 44 N.W.2d), this court said: "The common-law duty to exercise ordinary care under the circumstances, irrespective of statute, rests on a motorist at all times. Statutory rules of the road are cumulative and do not abrogate this common-law duty. They set the minimum, rather than the maximum, standard of care. Compliance with statute is not all that is required of a motorist."

Appellants make no complaint about the ground of negligence submitted as to display of lights, as provided by statute.

The court submitted four special interrogatories to the jury. The questions and the answers of the jury were as follows:

"(a) Did negligence on the part of the plaintiff's decedent contribute to cause accident and his injury.

"Answer: Yes      No X

"(b) Do you find the defendants or either of them guilty of negligence upon one or more of the three propositions set forth in the Court's Instruction No. 14:

"(1) In failing to exhibit a red light visible from a distance of 500 feet to the rear.

"Answer: Yes X    No

"(2) In stopping their vehicles on the traveled portion of the highway and not leaving a clear and unobstructed

width of at least 18 feet on such part of the highway opposite their standing vehicles for the free passage of other vehicles.

"Answer: Yes No X

"(3) In failing to give any warning to plaintiff's decedent that the defendants' cars were stopped on the traveled portion of the highway.

"Answer: Yes X No  "

It is pertinent to say that if error was committed as to the portion of the instructions to which appellants object, it was without prejudice. No objection was made to the part of Instruction No. 14 pertaining to the statutory provision as to a red light visible 500 feet. In answer to the special interrogatory as to red light the jury said it was not exhibited. This alone would sustain the verdict of the jury.

In 5A C. J. S., Appeal and Error, section 1773(3), we find the following statement: "Error in an instruction will be deemed harmless where special findings by the jury, or a finding by them on one of a number of issues, show that appellant was not injured thereby. Thus, where the jury returned its verdict on an issue with respect to which there was no error, error in instructions on other issues is harmless and will not constitute reversible error."

V. Instruction No. 16 pertains to display of red light on the rear of cars when stopped at night, which light shall be visible for a distance of 500 feet. It is a statutory provision under section 321.395. The instruction given is the usual and customary instruction pertaining to that question. It includes both defendants.

Appellants' complaint is connected with their objection to Instruction No. 4, pertaining to the court ruling as to joint enterprise.

As to Instruction No. 16 their contention is Mr. Weathermon is not liable for any light situation on the Chevrolet, since he had no control of it.

Our approval of Instruction No. 4 as to joint venture automatically places our approval on Instruction No. 16.

VI. Appellants allege the verdict is excessive, due to passion and prejudice on the part of the jury.

Decedent's life expectancy was 22.12 years. He had accumulated the following property: equity in home $9000; household goods worth about $3000; equity in car $1500. He had maintained $3000 of life insurance. There were claims in his estate of $2662.42.

He had materially assisted three sons through college and they were self-supporting. One son was still in college, and two daughters in the city schools.

In 1957 he earned $5433.47 from his work at Johnson Dairy. He was through at two o'clock so he did outside work from which he earned from $500 to $600.

The cash expenses of doctor, hospital and funeral expense interest amounted to $2009.45, which means the jury awarded $20,000 for the loss to his estate.

In Soreide v. Vilas & Co., 247 Iowa 1139, 78 N.W.2d 41, we permitted the verdict to stand at $37,500. Mr. Soreide earned about the same as Mr. Sisson, but his life expectancy was 35.15 years.

In Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275, decedent had a life expectancy of 25.21 years. He earned a little less than Mr. Sisson. We approved a verdict as to the estate loss of $25,100.

In DeToskey v. Ruan Transport Corp., 241 Iowa 45, 40 N.W.2d 4, 17 A. L. R.2d 826, we sustained a verdict of $23,325. Mr. DeToskey had an expectancy of only 13.47 years.

In these cases we commented on the diminished purchasing power of the dollar, and that is pertinent in this case.

Appellants are not contending for reduction, but for a new trial on account of passion and prejudice on the part of the jury.

The verdict is not excessive, in view of our recent decisions, and on the whole record we find nothing to indicate it was the result of passion and prejudice.

VII. Appellee cross-appealed. She raises one question. She claims she is entitled to interest on the judgment from date of Mr. Sisson's death to date of verdict.

In the case at bar the verdict was returned October 12, 1959. Judgment was rendered on the same date. November 20, 1959, and prior to the time motion for new trial was argued,

plaintiff filed motion to amend her petition, praying for interest on the verdict from date of Mr. Sisson's death to date of judgment. On January 25, 1960, the court overruled the motion, thereby denying allowance of interest.

The trial court instructed that if the jury found for plaintiff, the measure of damage would be the *present worth* of decedent's estate. The court carefully analyzed the elements involved, and the meaning of "present worth."

The primary question in connection with allowance of interest on the recovery from date of death to date of verdict is whether or not from the instructions it appears the jury have considered interest in arriving at the amount of the verdict. The word "interest" was not specifically used in the instructions in the case at bar, but the jury were instructed, in effect, that plaintiff was entitled to recover, if at all, the present worth of the pecuniary loss to the estate, computed as of the time of the verdict—not as of the time of death. It is obvious the present worth of a sum payable in the future becomes greater as the time for payment grows nearer. So the present worth of the pecuniary loss to this estate was greater at the time of the verdict than at the time of decedent's death—and by approximately the amount of interest on the present worth at time of death, if computed from that time, to time of verdict. So the effect of the instructions, which it is presumed the jury followed, was to give plaintiff the benefit of approximately the amount of interest on the present worth of the pecuniary loss to the estate as of the time of death.

We do not herein overrule the cases cited by appellee in her brief and argument such as Bridenstine v. Iowa City Elec. Ry. Co., 181 Iowa 1124, 165 N.W. 435, the recent case of General Mills v. Prall, 244 Iowa 218, 56 N.W.2d 596, and about a dozen other Iowa cases arriving at a similar conclusion as to this question. In view of our interpretation of the instructions they do not affect the case at bar.

We affirm the ruling of the trial court that interest should not be allowed until after the date of the verdict.

One fifth of the costs of appeal is taxed to plaintiff, four fifths to defendant.—Affirmed on both appeals.

All Justices concur except Bliss and Thornton, JJ., who take no part.